ALBANY,
October, 1829.

Pettit
v.
Candler.

---

PETTIT, impleaded with others, *appellant,* and CANDLER, *respondent.*

A general denial of *fraud* in answer to a *bill of discovery* is not enough, where, in addition to a general charge of a fraudulent concealment of property by a defendant, there is a specific charge that such property is held by others in secret trust or by colorable title for the benefit of the defendant; the specific charge must be responded to or the answer will be held insufficient.

APPEAL from chancery. The question here is upon the sufficiency of an answer in chancery. Candler in March, 1827, filed a bill in chancery stating the pendency of two suits at law in his favor against Pettit, who had been holden to bail; that the bail had become insolvent, that Pettit was about to put his property out of his hands and to leave the state, and praying a *ne exeat* and an *injunction* restraining Pettit from disposing of his property. The writs prayed for were granted by a master. On 3d April, 1827, a supplemental bill was filed stating the obtaining of a verdict in one of the suits for $5421, praying the benefit of the proceedings in the original suit, and for further relief. On 9th April, the chancellor dissolved the injunction for the reason that the

complainant was not entitled to it until an execution had been issued and returned unsatisfied, but he retained the *ne exeat.* On 30th June, 1828, a further or second supplemental bill was filed, repeating the allegations in the former bills, and adding a recovery in the second suit to the amount of $1410, judgments duly entered in each suit, and writs of *fieri facias* issued in each suit, and returns of *nulla bona* thereon. The bill then proceeded to state that for a long time before the recovery of the judgments, Pettit had transacted in his own name business to a large amount in the city of New-York, and was possessed of great property, and that he had not pretended or given out that he had become insolvent or had lost any property, but that just before the recovery of the judgments in favor of the complainant against him he had suddenly stopped doing business openly or in his own name, with the avowed intention of preventing the complainant from obtaining satisfaction of his judgments; that he had so placed his property that none of it was left visible so as to be taken upon execution, with the intent to defraud the complainant; and particularly charged that Pettit, at the filing of the second supplemental bill, *was possessed of real or personal property, or other property of some name or nature, to a large amount;* that he was possessed of or entitled to public stocks, to stock in banks or other incorporated companies, and to rents in real estate; that he held bill of exchange, promissory notes and choses in action to a large amount; *and that property real or personal, which in fact belonged to him, was held by others in trust for him and by colorable title.* The bill stated and enumerated particular acts of fraud which it charged upon the defendant, and concluded by praying a full answer and discovery, and that the defendant might be decreed to satisfy the judgments obtained against him, and that sufficient of his property to be set apart for that purpose.

The defendant put in his answer, denying that he had made any disposition or transfer of his property with a view to defraud the complainant or to defeat his obtaining satisfaction of his judgments and executions, or that he had so placed his property with such fraudulent intent that it could not be taken under executions upon the judgments. He also de-

ALBANY,
Dec. 1829.

Pettit
v.
Candler.

nied particular acts of fraud charged in the bill, but as to several of the charges he did not answer, or answered imperfectly; particularly he did not answer to the charge that at the filing of the bill, *property real or personal, which in fact belonged to him, was held by others in trust for him and by colorable title;* and to the charge that at the time, &c. he was possessed of *real or personal property,* or other property of some name or nature to a large amount, he only answered that at the time of the obtaining of the judgments *he was not nor had he since been seised or possessed of any real estate,* omitting to say any thing in relation to his *personal property.*

Twenty six exceptions were taken to the answer, in which, amongst others, the above particulars were insisted on; and on reference to a master, all the exceptions were allowed. The defendant excepted to the master's report by a *general exception* to the whole report, and not to particular exceptions allowed by the master. The chancellor overruled the exceptions to the report, and ordered a further answer to be put in. For the reasons of the chancellor, see 1 Paige's Ch. R. 427. From this order the defendant appealed.

The appeal was argued by

*G. Brinkerhoff,* for appellant.

*D D. Field & Sedgwick,* for respondent.

The following opinion was delivered by

Mr. Justice MARCY. I believe it was not controverted on the argument, that if any one of the exceptions to the answer was well taken, the chancellor's order overruling the general exception to the master's report was properly granted. The ground on which the appeal is placed is, that after the denial of all fraud, the answer is full to all those things concerning which the appellant could, by the authority of the court, be required to make an answer. The decision of this appeal involves, as the appellant supposes, a question as to the jurisdiction of the court of chancery to compel an answer to certain matters about which he is interrogated in the bills. If the powers of that court are as extensive as they are stated to be by Woodworth, J. in his opinion in the case

of *Hadden* v. *Spader*, (20 Johns. Rep. 554,) most of the exceptions to the answer are beyond a doubt well taken; but if the views of Chancellor Sanford, in the case of *Donovan* v. *Finn*, (1 Hopkins' Ch. R. 59,) as to equity jurisdiction in such matters are correct, the respondent is seeking disclosures in some respects beyond the power of the court to compel, and the exceptions must be submitted to a more particular examination in order to determine whether the appellant has not answered to every thing to which he could be required to answer.

The relief asked for and granted in the case of *Spader* v. *Hadden*, (5 Johns. Ch. R. 280,) lay within the uncontested powers of the court; but the doctrine advanced by some of the judges when that case was reviewed in this court, went greatly beyond the principle necessarily involved in it, and is supposed by Chancellor Sanford not to have the sanction of the court. Nothing can . be certainly said to be established as law by this court in a particular decision but what is necessarily involved in the case decided. The truth of this proposition is shewn by the case of *Hadden* v. *Spader*. Mr. Justice Woodworth held that a judgment creditor, after he had proceeded to the extent of the remedies given by a court of law without obtaining satisfaction, could reach the trust property of his debtor by invoking the aid of a court of equity. He is understood to hold that the judgment creditor in such a case can resort to the debtor's *stocks* and the *debts* due to him, even where the stock was not purchased or the debts creatad by means of the property *fraudulently withdrawn* from the judgment of the creditor. To these views Ch. J. Spencer gave his explicit sanction. Platt, justice, yielded his assent to the conclusion of Mr. Justice Woodworth, but qualified his opinion by saying that he was "not prepared to extend the doctrine to any other cases than those wherein the trusteee received goods liable in themselves to execution, under circumstances which imply fraud in fact or in law as against creditors." "In an abstract view it may appear proper," he says, "to extend the remedy in favor of crediors to every *chose in action*; but, in my judgment, such power has not been conferred on our courts of justice.' Al-

though a large majority of this court voted in favor of affirming the decree of chancellor, it can never be ascertained how the different members viewed the principles which were discussed in delivering the opinions, but not necessarily decided by that case.

Chancellor Sanford, in the case of *Donovan* v. *Finn*, examined with great care the doctrine advanced in the opinions given in the case of *Hadden* v. *Spader*, and he considers that "the cases of authority in which relief has been given to judgment creditors were in themselves cases of equitable jurisdiction, involving fraud or trust, or seeking to subject to the satisfaction of a judgment, property in itself liable to execution, by removing a conveyance which operated as a fraudulent impediment to the execution." His conclusion is, that the court of chancery " has no power to compel the debtor of a judgment debtor to make payment to the judgment creditor in satisfaction of the judgment."

There is an obvious difference in the views of these learned judges as to the jurisdiction of courts of equity in granting aid and relief to judgment creditors which it would be our duty to adjust, however difficult it should prove to be, if the decision of this case required it; but in my view, it may be decided without attempting to settle this contested boundary of jurisdiction; and any labour, therefore, for this purpose would be not only unnecessary, but unprofitable, for the power to grant relief to the utmost extent it was pushed, by any remarks made in the case of *Hadden* v. *Spader*, will become in a very few days a part of our system of jurisprudence by legislative recognition or adoption.

It is contended on the part of the appellant, that relief in cases like this can only be afforded *where fraud exists;* that the answer having denied all manner of fraud, the *gravamen* of the bill is removed and no further answer can be required. It is undoubtedly correct, that where a defendant denies some substantive fact which, if true, would entitle the complainant to relief, and if not true would be a complete bar to it, no further answer can be compelled till the truth of that fact is established. The case put to illustrate this doctrine is that of a bill filed by a person representing himself

to be an *heir*, and as such claiming a discovery, and the defendant putting in an answer denying the heirship. This issue must be disposed of, and in favor of the allegation of the complainant before any discovery will be compelled. So where a person is called on to answer as a *partner*, if he denies that he is such, he cannot be required to make discovery or answer further until the fact of his being a partner is established. (Cooper's E. Pl. 315, 16.) But where fraud is charged upon the defendant. and a series of transactions is specified in relation to which the fraud is alleged to exist, the defendant cannot shield himself from fully disclosing these transactions by a general denial of fraud. If a proposition so obvious as this needed support from authority, we have only to look to the case before mentioned of *Spader* v. *Hadden*. There fraud was most positively denied, yet relief was granted, and that too on the ground of fraud. Fraud results from the law and the facts, and the court must be made acquainted with all the facts to be enabled to determine whether fraud does or does not really exist. The defendant may, in many cases, very honestly deny fraud in a transaction which is actually tainted by it; for what constitutes fraud particularly fraud in law, is often a matter of much diversity of opinion; he therefore must answer to every material allegation, and cannot on his general denial of fraud, take his stand on the threshold of the case and resist the call of the respondent for a full developement of those transactions wherein fraud is alleged to exist.

Confining the jurisdiction of the court of chancery to the narrowest limits that have ever been assigned to it, power it certainly has and exercises daily, of requiring answers to such allegations as the appellant in this case was wholly omitted to answer, or has answered imperfectly. He is charged with being the owner of real and personal property of some name or nature to a large amount; and that he has property which others hold by some secret trust, and under a colorable title. He is called on to answer to these charges. He denies having been possessed or seised of any *real estate* at the time or since the recovery of the judgments, but he omits to answer whether he had not *personal property* at the time

of filing the further supplemental bill; and he has not stated whether he had not at that time, or when the answer was put in, real or personal property, held by other persons in *secret* trust, or by *colorable title.* The position laid down by his honor the chancellor is indubitably correct, that the respondent has a right to a discovery of the manner in which the appellant has disposed of his property, to enable the court to see whether the disposition was or was not fraudulently made. He had also a right to a discovery of property belonging to the appellant which others hold by secret trust or colorable title, to the end that any such conveyance,' which should appear to be fraudulent, either in law or fact and which is an impediment in the way of the respondent's execution might be removed.

It will not be expected that a particular opinion should be given on each exception, because, as has been before observed, if a single one of the twenty-six is well taken, the decision of the court must be for the respondent.

In the particulars above specified as well as others, I think the exceptions to the answer are well taken, and I am therefore for affirming the order of the chancellor.

The CHIEF JUSTICE expressed his concurrence in the opinion delivered by Mr. Justice MARCY. He said he had not examined the main question, not deeming it necessary to the decision of this cause; his impressions however were, that under the existing law, a defendant is not bound to answer as to property which never was within the reach of an execution; that he could only be called on to respond as to such property which had been fraudulently withdrawn from the operation of an execution.

Mr. Justice SUTHERLAND also concurred in the opinion delivered by Justice MARCY, but declined expressing an opinion as to the point alluded to by the Chief Justice.

Mr. Senator S. ALLEN. The appellant insists that he has answered the points excepted to as far as he was bound and compelled to answer; and that he was not bound to disclose his interest in any public stock or stocks,

ALBANY,
Dec. 1829.

Petit
v.
Candler.

or choses in action, and the nature, amount and value of all his claims, liquidated and unliquidated.

There are several cases in which the principle has been clearly recognized, that a court of chancery has the power to compel the discovery of personal property, placed by the debtor beyond the reach of legal process ; and I am unable to discover any good reason, and the counsel for the appellants has adduced none, why public stocks, notes of hand, bonds, or debts of any kind should be exempt from execution any more than other estate whether real or personal, or why the effect of a judgment should be defeated while the debtor may be in possession of a large property of the kind alluded to.

That the principle of compelling a discovery and account of such property has been acted on by our equity courts, appears from the case of *Hendricks* v. *Robinson*, (1 Johns. Dig. 205,) where it was held, that chancery will lend its aid to a judgment creditor, by compelling a discovery and account against a debtor or third person, who had possession of the debtor's property, and placed it beyond the reach of legal process. The same is the case of *Hadden* v. *Spader*, and so important has the principle been deemed by the legislature that it has been incorporated in the revised statutes, which go into effect on the first of January, 1830.

The justice and equity of this rule appears to me indisputable, for what can be more reasonable than that every man possessing the means should pay his honest debts; and if he possess the means, and place them in a situation beyond the reach of legal process, is there any injustice in compelling him to render an account of the property thus fraudulently concealed ? The provisions of the insolvent laws of this state, and the practice under them, gives good reason to fear that acts of concealment are by no means uncommon, and it is of importance to the morality of the community that our courts of equity should be sustained in their endeavor to arrest this growing evil. My opinion is, that the order of the chancellor was proper and ought to be affirmed.

Vol.III.                79

Mr. Senator BENTON expressed his concurrence in the opinion delivered by Mr. Justice MARCY, but declined expressing any opinion upon the question whether a defendant could be compelled to answer as to stock, notes and other choses in action.

This being the unanimous opinion of the court, the order of the chancellor appealed from was thereupon affirmed.