## MILES *v.* MILES & *a.*

A defendant, in a bill of equity which contains a general interrogatory, must answer all the material allegations and charges in the bill, whether specially interrogated thereto or not.

In drawing a bill, it is well, in order to prevent evasion, to insert specific interrogatories concerning the matters considered to be the most essential; yet, under the general interrogatory, an answer is open to exception, if it omits to answer material charges and statements in a bill, concerning which no specific interrogatories are introduced.

A defendant in equity must answer as to his knowledge, remembrance, information and belief. If a fact is charged as within his personal knowledge, he must answer positively, and not as to his remembrance or belief; if not within his knowledge, he must answer as to his information and belief. And he must answer directly and without evasion, not only literally as to the several matters charged, but the substance of each charge must be answered. A general denial is not sufficient, but there must be an answer to all the special circumstances and particular inquiries.

IN EQUITY. The bill alleges that on the 26th day of March, 1841, Reuben Miles of Madbury, father of the orator, Abraham Miles, made and published his last will and testament; and on the 7th of August, 1841, made and published a codicil to his will. That Reuben died in Madbury, on the 23d day of June, 1845, and on the 1st day of July, 1845, the will and codicil were duly proved and allowed. That Reuben, by his will, among other things, devised to his daughter, Betsey Meserve, wife of Joseph Meserve, now of Wilson's Village, in the county of Niagara and State of New York, one half in common and undivided of his homestead farm in Madbury, including all the land which Reuben then occupied, with one half of all the buildings thereon, and one half in common and undivided of his wood lot, in Barrington, called the Waldron Hill lot, to have and to hold the same to her and her assigns, for and during the term of her natural life, and from and immediately after her decease, to such child or children of said Betsey, if any she should ever have, as might be living at the time of her decease, to have and to hold the same to such child or children, and its

or their heirs and assigns forever; but in case Betsey should die without leaving any child of hers alive at the time of her decease, then and in that case, from and immediately after the decease of Betsey, to Abraham Miles, the orator, and Tichenor Miles of Madbury, one of the defendants, sons of the testator, in equal shares, to have and to hold the same to Abraham and Tichenor, their respective heirs and assigns forever.

That Reuben, also, among other things, devised to his daughter, Nancy Miles, another of the defendants, the other half in common and undivided of said farm, including all the land which Reuben then occupied, with one half of the buildings thereon, and one half in common and undivided of the Waldron Hill lot, to have and to hold the same to her and her assigns, during her natural life, and from and immediately after her decease, to such child or children as she might at that time have living, and to its or their heirs and assigns forever; but in case Nancy should die without leaving any child alive at the time of her decease, then and in that case, from and immediately after her decease, to Abraham Miles and Tichenor Miles, in equal shares, to have and to hold the same to them and their respective heirs and assigns forever.

That it was ordered by the will that the devises to Betsey and Nancy, and their heirs, should be subject to and charged with any devise that the testator might thereinafter make to his wife, Lydia Miles, another of the defendants, and to any incumbrance that he might order in her favor.

That Reuben gave to his wife one-third part of his homestead and the Waldron Hill lot, in common and undivided, so long as she should remain his widow.

The bill then charges that Betsey and Joseph Meserve, on the 14th of July, 1846, by their deed of that date, for a valuable consideration, conveyed to the orator all their right in the premises.

That Nancy and Lydia Miles applied to the judge of probate for partition of the premises, and the same were duly divided and set off to the parties by a committee, and the decree of the judge of probate made thereon, the 4th of April, 1848. The particular parts assigned to the several parties interested are set forth in the bill.

That on the 17th of April, 1847, the complainant released to Besey Meserve and her husband all his interest in the premises; and that John Kingman of Durham, another of the defendants, claims to hold that part of the premises set off to Betsey Meserve and Joseph, by a lease from them.

That Lydia Miles is about eighty years of age, and is still the widow of Reuben; that Betsey Meserve is fifty-six years of age, and never had any child; that Nancy Miles is forty-seven years old, and was never married, and never had any child.

That the complainant has reason to believe, and does believe, that the defendants intend to commit strip and waste on the premises so devised and divided, and that there is an understanding, if not an express agreement among them for that purpose; and that when the premises were divided, there was standing thereon a large amount of pine and oak wood and timber, and that there is still standing on some parts a large amount of pine and oak wood and timber.

That John Kingman has, as the orator has been informed and believes to be true, for about two years last past, cut and drawn away wood and timber to a large amount from that part of the premises devised and set off to Betsey Meserve; and that Kingman, during that time, has cut and drawn from the premises full twenty cords of pine wood, and sold the same; also pine logs, sufficient to make from five to ten thousand feet of boards, and converted the same to his own use, but not on said premises, and that the wood and timber were worth from $100 to $150; and that Kingman told the complainant, in the month of January before the filing of the bill, that he intended to cut wood on the premises that

winter sufficient to last his fire two winters, and that King-man never lived on any part of the premises.

The bill also charges Nancy Miles with having committed waste upon the premises to a considerable amount, and sets forth the particulars of the same. It also makes the same charges against Tichenor Miles, and states that the defendants pretend that they have a right to cut, as set forth in the bill.

The bill then states that " to the end, therefore, that the defendants may, upon their several and respective corporal oaths, to the best and utmost of their several and respective knowledge, remembrance, information and belief, full, true, direct and perfect answer make to all and singular the matters aforesaid, and that as fully and particularly as if the same were here repeated, and they and every of them distinctly interrogated thereto, and that more especially said confederates may, in manner aforesaid, answer and set forth"—

Whether Reuben Miles made his will and codicil, and the devises therein set forth, and whether the will was proved, as in the bill is alleged.

When Reuben Miles died, and whether the real estate was divided, as set forth in the bill.

Whether deeds were given, as in the bill of complaint is alleged, and what deeds were given, and where.

What is the age of Lydia Miles, and Nancy Miles and Betsey Meserve, and whether Betsey and Nancy ever had any child.

Whether Kingman has any right to any part of the premises so divided; and what right and to what part and from whom, and when and on what terms and conditions.

Whether the defendants, or either of them, and which, have cut and hauled, or permitted to be cut and hauled, or caused to be cut and hauled, any wood and timber from the premises, and where and how much by each, and the value of the same, and what disposition each has made of

the wood and timber so cut and hauled, or permitted or caused to be cut and hauled.

Whether the defendants, jointly or severally, have not sold the wood and timber, by them and each of them taken from the premises, and how much each has sold, and the value of the same, and where the same was sold, and whether there is not now a large amount of oak and pine wood and timber on the premises.

The bill then prays an injunction against the defendants and their agents from committing any further strip and waste on the premises, and from cutting and hauling wood and timber therefrom, beyond what tenants for life have a right to cut; and that the defendants be compelled to account for all the illegal cutting done by them, and to pay to the orator his just proportion of the value of the same. There is also a prayer for general relief.

To the answers of Betsey Meserve and Joseph Meserve and John Kingman, replications were filed, and to the answers of the other defendants, Nancy Miles, Lydia Miles and Tichenor Miles, exceptions were filed.

The defendants not submitting to the exceptions, the questions arising upon the same are for the determination of the court.

*Sawyer & Hobbs*, for the orator.

*Christie & Kingman*, for the defendants.

EASTMAN, J. To the answer of Lydia Miles, the exception is taken that she has not answered and set forth whether the orator has reason to believe, and does believe, that the several defendants, naming them, intend to commit strip and waste on the premises devised by Reuben Miles, and whether there is not an understanding, if not an express agreement among them for that purpose.

Upon looking into the bill, we do not find any particular

interrogatory specifically interrogating the defendants upon this point. But in the general allegations of the bill, the charge is made as set forth in the exception. There is also in the bill the general interrogatory or requisition that the defendants may severally and respectively, full, true, direct and perfect answers make to all and singular the premises, as fully and particularly as if the same were repeated, and they and every of them distinctly interrogated thereto.

There is nothing in the answer particularly denying this charge in the bill—nothing except the general and usual denial of all unlawful combination and confederacy; and the question is raised whether a defendant is obliged to answer the statements and charges in a bill, unless specifically interrogated thereto.

According to the present English practice, the general interrogatory is not sufficient. By the 16th of the orders of August, 1841, it is provided that a defendant shall not be bound to answer any statement or charge in the bill, unless specially and particularly interrogated thereto. 2 Danl. Ch. Pl. & Prac. 820. But such was not formerly the practice.

The same rule has been adopted by the supreme court of the United States. Rules in Equity, 40 January term, 1842.

With us no rule of the kind has been adopted, and we adhere to the general practice of courts of chancery, which have no particular rules upon the subject, and require a defendant to answer all the allegations and charges in the bill which may be material to the plaintiff's case; and although, to prevent evasion on the part of the defendant, it may be well, and is usual, to add interrogatories concerning the matters considered to be most essential, yet, under the general interrogatory, an answer is open to exception, if it omits to notice material charges and statements in the bill, concerning which no specific interrogatories are introduced. 1 Danl. Ch. Pl. & Prac. 432; Story's Eq. Pl. § 38; *Methodist Episcopal Church* v. *Jaques*, 1 Johns. Ch. Rep. 65; *Hag-*

*thorp* v. *Hook*, 1 Gill. & Johns. 270 ; *Salmon* v. *Claggett*, 3 Bland. 125 ; *Bank of Utica* v. *Messereau*, 7 Paige 517 ; *Parkinson* v. *Trousdale*, 3 Scam. 380 ; *Cuyler* v. *Bogert*, 3 Paige 186.

The matter has been settled in the same way in Massachusetts, by rule of court. Mass. Rules for the Regulation of Practice in Chancery, rule 5.

According to these suggestions, the defendant should have made answer to this charge in the bill. It is a material allegation of an intent to commit waste, and the exception must be sustained.

To the answer of Nancy Miles, two exceptions are taken. The first is, that she has not, to the best of her knowledge, remembrance, information and belief, answered and set forth whether John Kingman, during the time stated in the bill, cut and hauled from the premises full twenty cords of pine wood, and sold the same, and cut and drew from the premises pine logs sufficient to make from five to ten thousand feet of boards, and converted the same to his own use, but not on the premises; and whether the wood and timber were worth from one hundred to one hundred and fifty dollars, and that Kingman told the orator, in the month of January then last, that he intended to cut wood on said premises, the present winter, sufficient to last his fire two winters, and that Kingman never lived on any part of the premises.

The bill contains the allegation set forth in the exception, the answer to which is as follows: that Kingman held the premises, by lease from the Meserves, for two years, and that during said two years he had some pine trees cut for fencing, and sawed the same into boards; and during the latter part of the winter of 1850, or in the spring of that year, he caused some of the boards to be hauled and left at or near the different bars on the premises, and the same were afterwards used in repairing said bars. That Kingman used no fuel on the premises while he so occupied the

same, and this defendant does not know that he took any from the place to be used elsewhere.

The answer to this allegation of the bill is far from being explicit. Kingman might have cut the timber alleged in the bill, and the defendant, Nancy Miles, have known the fact, and still the answer be true; for he might have cut timber to be sawed for bars in addition to that specified in the bill.

She says, also, that she does not know that Kingman took any fuel from the premises be used elsewhere. But if she had no knowledge upon the subject, she may have had information.

The answer to the part of the bill contained in this exception is entirely insufficient, and the exception must be sustained.

A defendant must answer as to his knowledge, remembrance, information and belief. If a fact is charged as within his personal knowledge, he must answer positively, and not as to his remembrance or belief. If facts are charged as having happened, but they are not within his own knowledge, he must answer as to his information and belief. And he must answer directly and without evasion. He must answer the substance of each charge, as well as literally the several matters charged. A general denial, also, is not sufficient, but there must be an answer to all the special circumstances and particular inquiries. *Hall* v. *Wood*, 1 Paige 404; *Devereaux* v. *Cooper*, 11 Vt. Rep. 103; *Utica Ins. Co.* v. *Lynch*, 3 Paige 210; Coop. Eq. Pl. 314; *Smith* v. *Lasher*, 5 Johns. Ch. Rep. 247; *Taylor* v. *Luther*, 2 Sumner 228; *Woods* v. *Morrell*, 1 Johns. Ch. Rep. 103; *Petit* v. *Candler*, 3 Wendell 618; Story's Eq. Pl. 852; *Mountford* v. *Taylor*, 6 Vesey 792; 2 Danl. Ch. Pl. & Prac. 830; *Morris* v. *Barker*, 3 Johns. Ch. Rep. 297; *Bank* v. *Lewis*, 8 Pick. 119.

The other exception to the answer of Nancy Miles is the

same as that taken to the answer of Lydia Miles, and must be sustained accordingly.

To the answer of Tichenor Miles six exceptions are filed. The fifth and sixth are the same as those filed to the answer of Nancy Miles, and they must be sustained for the reasons already given. The disposition of the other four involves the same question as that stated in deciding the first exception to the answer of Nancy Miles, and it is unnecessary to state here anything further than to say that upon the principles there laid down, we think, the first and second exceptions should be overruled, and the third and fourth should be sustained. The answer to the allegations embraced in the first and second exceptions is sufficient, while the answer to the allegations contained in the third and fourth exceptions is evasive and insufficient.