Comstock, J.
If we assume, as the appellants contend, that the trust which the executors hold under the will in respect to the interest of Myron H. Ferris, is technical and passive merely, the conclusion does not follow that the plaintiffs are entitled to the relief they claim. By the express provisions of the will, reading the codicil as a part of it, his interest is to terminate on the event of a decree or judgment pronounced against him in a creditors’ suit instituted for the purpose of obtaining the fund; and in that event the executors are directed to apply the income to the support of his family by paying the same to his wife, or in any other mode which they in their discretion may adopt. I know of nothing in the rules of law to prevent these provisions from taking effect according to the intention of the testator. It may and should be conceded, that if the bequest to Myron H. Ferris had been given to him absolutely for life, with no provision for its earlier termination, and no limitation over in the event specified, any attempt of the testator to make the interest of the beneficiary inalienable, or to withdraw it from the claims of creditors, would have been nugatory. Such an attempt would be clearly repugnant to the estate in fact devised or bequeathed, and would be ineffectual for that reason, as well as upon the policy of the law. (The Blackstone Bank v. Davis, 21 Pick., 42; Hallett, v. Thompson, 5 Paige, 583; Graves v. Dolphin, 1 Sim, 66, *45 Brandon v. Robinson, 18 Ves., 429.) This doctrine, however, and the cases on which it rests do not deprive a testator of the power to declare effectually that the bequest shall cease on the happening of an event which would subject it to the claims of creditors, and then to give it a different direction. “ There is,” said Lord Eldon, in Brandon v. Robinson, “ an obvious distinction between a disposition to a man until he becomes a bankrupt and. then over, and an attempt to give him property and to prevent his creditors from obtaining any interest in it although it is his.” See, also, Shee v. Hale (13 Ves., 404); Lewes v. Lewes (6 Sim., 304); and Graves v. Dolphin (1 id., 66). This distinction is one of substance, and we think the principle on which it depends will sustain the will of the testator in the present case. If a testator may provide that his bounty bestowed upon one person shall cease and go to another on the occurrence of bankruptcy, I can see no reason why he may not do so in the event of an execution returned unsatisfied, followed by a creditors’ suit and judgment therein.
The decision of the court below is light in another aspect. Prior to the Revised Statutes it was an open question, whether after execution at law returned unsatisfied, a court of equity had jurisdiction, in the absence of special circumstances of fraud and trust, to entertain a creditors’ suit for the discovery and appropriation of the debtor’s interest in stocks, choses in action, legacies and property which could not be reached by the process of courts of law. The case of Donovan v. Finn (1 Hopk., 59) is a direct adjudication that the court of chancery possessed no such power. In the case of Hadden v. Spader (20 Johns., 554), the question was not necessarily involved, but the contrary doctrine was distinctly asserted. See, also, Pettit v. Candler (3 Wend., 621). The Revised Statutes (2 R. S., 173, § 38) have settled the question in favor of the jurisdiction in general, but against it in the excepted case where a “ trust has been *46 created by, or the fund so held in trust has proceeded from some other person than the debtor himself.”
Here the fund in question was created by and proceeded from the testator. It was also a trust fund. Active duties in respect to it were imposed upon the executors and trustees, such as clearly required in them the presence of the legal estate. They were directed to sell both' the personal and real estate and invest the proceeds; the time of sale only, in respect to the real estate, being left in their discretion. Myron H. Ferris was to have only the “ income and interest” of one-third of the fund during his life. The principal being given over on his death to those designated in the will as his “ heirs-at-law.” This purpose alone of the. testator would require the intervention oí a trustee in order to secure the principal to those for whose ultimate benefit it was designed. The trust was clearly active in all its aspects, and without determining the question whether it falls within the enumeration of valid trusts in real estate, it is good as a trust in personal property. It was the clear intention of the testator that the whole of his estate, after paying the debts and the particular legacies, should be converted by sale and investment into a pecuniary fund to be held by the executors and trustees for the purposes indicated; and upon the principle of equitable conversion, the real estate is therefore to be deemed personalty from the time of his death., (Bogert v. Hertell, 4 Hill, 492; Stagg v. Jackson, 1 Comst., 206.)
I have no hesitation, therefore, in saying that the fund which "the plaintiffs are endeavoring to reach, is held in trust and comes within the exception of the statute before referred to. It is consequently exempt from the claims of the creditors of Myron H. Ferris, unless the provision is larger than necessary for the support of himself and family, that being the declared object of the trust so far as he is concerned. The exception on which this exemption *47 rests was doubtless not intended to exonerate a surplus of ✓ the fund over and above what is required for the support of the beneficiary and the education and support of those for whom he is bound to provide. Such is the construction which the statute has generally recceived in analogy to the 57th section in the article concerning “ uses and trusts ” in real estate, which expressly subjects the surplus beyond the sum necessary for support and education to the claims of creditors. (1 R. S., 729, § 57; Clute v. Bool, 8 Paige, 83; Stewart v. McMartin, 5 Barb., 438.) But in this case there is no averment in the complaint, nor was there any proof or suggestion on the trial, that the provision made for Ferris, the judgment debtor, was any larger than the objects of the trusts strictly required.
The judgment should be affirmed.
Mitchell, J.
The will by words of conveyance devises to. the executors all the real estate of the testator for the use of the parties beneficially interested, and constitutes the executors trustees of his personal estate for their use in order more fully to carry out his intentions. . This is a devise of the real and personal estate to the trustees in trust to sell the same for the benefit of the legatees, and was a valid express trust. It is immaterial whether the trust was to receive the rents and pay them over to those interested, although this probably was necessary to carry out the intention of the testator. There was a positive direction to convert the lands into money; that makes the whole estate in effect personal from the death of the testator, and when once converted into personal estate it was to remain in the hands of the executors; they were to invest the proceeds of sale on bond and mortgage on real estate and keep it so invested. They were, therefore, the parties to receive the income and to pay it out. They would not be justified in passing into the custody of Myron or of his sister any abquot part of the capital of the estate. *48 for that would he to put the capital at risk, and Myron and his sister had each at most a life interest in the capital, and the reversion was to go to others. The executors, therefore, must retain the legal title to the securities in their own names and hold them as trustees, and as trustees receive the income and pay it out as it shall accrue. Such was the effect of the will; then came the codicil, which, as the expression of the last wish of the testator, must control the former instrument. That declares it to he his will, in case creditors’ bills be filed against Myron and judgments be obtained against him thereon, that from that period the estate or income of Myron shall cease; and the testator thereupon directs his executors thenceforth to expend the interest or income for the support of the family of Myron by paying it to his wife or in any other practicable way.
By the will the beneficial interest in a certain share was in Myron during his life, and might perhaps have been reached in part by his creditors. The testator then alters that interest, so that on a certain event it should cease and the income should thenceforth pass to others. As the will and codicil form but one instrument, the estate, which the will might have given but for the codicil, never existed. The only estate or interest which Myron ever had was that which was created by the joint effect of the two instruments: that was a right to have the income of a certain share paid over to him until a judgment Creditor’s bill should be filed against him and a decree had thereon, and then that right was to cease and to pass in favor of his family. The father when he made the will and codicil owned the whole estate; he had the absolute power over it; he could carve out of it such interests as he pleased, if he violated no rule of law in doing so; he could give one-third to Myron so long as he lived in this state, or so long as he lived out of it, or until a third person should return from Borne or go to it, or on *49 any other similar arbitrary contingency, according to his will or caprice. He was under no obligation, legal orí moral, to give his property'so'that the creditors of Myron | could take it from him or his family. His moral duty and j! his duty to the state were greater to save Myron and his ¡ family from want or from being a burthen on the public,; than to devote his property to pay his son’s creditors. There is therefore no public policy which should frustrate!; the testator’s intention.
The testator has not. as supposed by the counsel for the plaintiff, given to his son a certain estate and then attempted j while the estate continued to take from it one of the incidents which the law binds inflexibly to it; but he gives ! him a certain right in the property, which is to continue'1 for a limited time until an uncertain event shall occur, and then, when that event occurs, is to cease entirely. While the son holds it he holds it with all the incidents which the law attaches to it; when the event, on which it is to cease, occurs, the son has no longer any right or interest in it, and with the loss of his right all right of his creditors also falls to the ground. If the creditors could find any previously arising income, which the son had not called for and could call for, undisposed of- and in the hands of the executors, their rights to that would remain unimpaired; but when his right ceased, so also did theirs.
In Shee v. Hale (13 Ves., 404), the testator bequeathed his residuary estate to trustees to pay to his son an annuity during his natural life, or until he should contract to part with the annuity or some part of it, or to charge it by anticipation, or should empower any person to receive any part thereof except the next quarterly payment after such power; and declared that if his son should sign any writing to do any of those things the annuity should cease to be payable to him and should sink into the residue. The son took the benefit of an insolvent law and inserted the annuity in the schedule of his property. The assignees claimed the *50 annuity, but their bill was dismissed. The only doubt that seemed to be the foundation for the claim was whether the son had done such an act as the will provided against; the master of the rolls held that he had. In Lewis v. Lewis (6 Simons, 304), the testator had devised lands to .trustees in trust to receive the rents and pay ,£300 yearly for the maintenance of his son’s family and the residue for the use of his son, but so that he should have no power to charge or alienate it, and that it should not be subject to his debts or be taken for the use of his creditors. These words may have been inoperative if they had stood alone; but the testator added that if the son should at any time frustrate the trust of the will, or interfere therewith or with the receipt of the rents, then the said residue should not be paid to his son, but should be accumulated. The son conveyed the property to trustees for his creditors, and it was held that in doing so he had attempted to frustrate the trust of the will, and so had brought about the contingency on which his interest in the residue was to cease. The trustees were directed to hold the residue to accumulated under the will. In Cooper v. Wyatt (5 Madd., 482), the testator devised to trustees certain estates, first to furnish a maintenance for the family of his nephew, Samuel Herbert, and to give the residue to him but not to his assigns, and declared his will to be, that if his nephew should by any means sell, dispose of or encumber the right he might have for life under the will, then his said right should cease and be applied for the benefit of the children of the nephew in such manner as the trustees should think proper. Samuel Herbert became bankrupt and his estate was assigned to assignees. It was contended not that the testator might not •have caused the estate to cease by bankruptcy, but that bankruptcy was a proceeding in invitum, and so not the act of the nephew and that the will only provided against voluntary acts of the nephew. The rule is laid down plainly by the vice-chancellor: “ The true inquiry in this case is whether, *51 by the expressions used in this will, it can be collected to have been the intention of the testator that the estate should determine as to the nephew in the event of his bankruptcy.” The court held it was so; that’ it was to cease “ whenever it could no longer be the subject of his immediate personal enjoyment.” The same principle was recognized in Graves v. Dolphin (1 Simons, 66), and it was there said that “ the testator might if he had thought fit have made the annuity determinable by the bankruptcy of his soninstead of that he gave estates to trustees in trust to pay an annuity to his son for life, and then declared it to be his intention that this annuity was for the personal maintenance of his son and should not be liable for his debts, but should be paid to him as it became due. It failed to contain any direction giving it over to another on the bankruptcy of his son; it therefore continued in that event to be his, and passed to his assignees. The same distinction was stated and applied in Brandon v. Robinson (18 Ves., 429). Lord Chancellor Eldon said: “There is no doubt that property may be given to a man until he shall become bankrupt. It is equally clear, generally speaking, that if property is given to a man for his life, the donor cannot take away the incidents to a life estate. If a condition is so expressed as to amount to a limitation, neither the man nor his assignees can have it beyond the period limited.”
Thus the rule is made not to depend on the question whether the act causing the termination of the estate comes from the tenant for life or from his creditors, but on its being made (whatever it may be) a cause for the transfer of the estate to another. In Hallett v. Thompson (5 Paige, 583), there was no bequest over on any contingency. In Degraw v. Clason (11 Paige, 136), there was what the chancellor considered an absolute estate in the legatee, alienable by her although held in trust for her, and there were no *52 words showing that the bequest was for the personal support of the legatee, and there was no bequest over.
The judgment of the supreme court should be affirmed.
Judgment affirmed.