SHAINWALD, Assignee, etc., *v.* LEWIS.

(*District Court, D. California.* March 30, 1881.)

1. EQUITABLE RELIEF—EXECUTION—INJUNCTION—RECEIVER.

Where a decree in equity is obtained against a defendant for a sum of money, and execution has been returned unsatisfied, a court of equity has jurisdiction of a bill alleging that the defendant has secreted his property, and is disposing of the same with the avowed intent of defrauding the complainant, and depriving him of the fruits of his decree, and praying an injunction and receiver. It is not necessary in such a bill to particularly describe the assets, whether equitable or not, sought to be reached, and a court of equity will issue an injunction, appoint a receiver, and compel an assignment of all the property of the defendant, when such action is necessary to defeat the fraudulent designs of the defendant.

2. SEQUESTRATION.

*Quære,* whether, upon such a showing to the court by petition in the original suit, a writ of sequestration may not issue.

3. INJUNCTION—CREDITOR'S BILL.

*Quære,* whether, under such an original decree, and upon the showing above mentioned, the court has not the power to issue an injunction, and make an order for a receiver and assignment, without requiring the complainant to file a so-called creditor's bill, or to wait for the return of an execution unsatisfied.

In Equity. Motion to Revoke Appointment of Receiver.

*James L. Crittenden,* for plaintiff.

*Delos Lake,* for respondent.

HOFFMAN, D. J. On the fifth day of November, 1880, a decree was entered in this court against the above-named respondent, by which he was adjudged to have obtained possession of the funds of the bankrupt firm, of which the complainant is assignee, by fraud and collusion, and by means of fraudulent and collusive judgments against the firm founded on fictitious debts. He was, therefore, decreed to be a trustee for the complainant of all such funds, and was required to pay over to the complainant the amount thereof as ascertained by the decree. On this decree an execution was issued and returned unsatisfied. A bill was thereupon filed by the complainant setting forth the previous proceedings in the cause, and averring that respondent had procured a homestead to

be declared upon his land; had sold valuable real estate, and threatens, intends, and is about to leave and depart the United States, and take and carry with him all his money and other property, with the intent, object, purpose, and design of preventing the same from being levied upon or applied in satisfaction of said decree, and with intent to hinder, delay, and defraud this complainant of the moneys and property to which he is entitled under said decree. That since the enrolling of said decree the respondent has secretly transferred a large part of his property to divers persons, and has secreted the remainder of his property with the intent and design aforesaid, and to prevent said property from being seized on execution, or secured or applied to satisfy said decree. That the respondent has stated and declared to divers persons that he had so fixed his property that it could not be seized to satisfy said decree. That the respondent has property, debts, and other equitable interests to the value of $90,000, exclusive of all just prior claims thereto, which the complainant has been unable to reach by execution. That the action is not commenced by collusion with respondent, or with any other person, for the purpose of protecting the property or effects of the respondent against the claims of other creditors.

The bill contains the usual prayer for an injunction, for a receiver, and for other relief. Upon this bill an injunction was issued and a receiver appointed, and the respondent was ordered to show and make an assignment of all his property and effects. This he at first refused to do, and was committed for contempt. At a subsequent day he executed the assignment, which, by order of the court, remained in the custody of the clerk until the hearing and decision of the present motion to vacate the order appointing a receiver and for the execution of the assignment. That motion has accordingly been made and argued. It is based on the grounds—(1) That the bill of complaint herein does not disclose any equitable ground for the appointment either of a receiver or referee; (2) that, upon the facts disclosed in the affidavits and papers filed herein, the appointment of a receiver or referee is unnecessary. The notice of motion states "that it is based upon

the affidavits of the respondent herein, with copies of which you are herewith served, and upon all and singular the records, papers, files, and proceedings in this suit."

At the hearing of the motion an amended bill was presented and read as an affidavit. It is unnecessary to detail at length its averments. It is sufficient to say that they corroborate the allegations of the bill, and of the affidavits in support of it, and state other facts tending to show the absolute necessity for the immediate appointment of a receiver to prevent the loss to the complainant of the property and assets of the respondent, and of the trust funds invested by him in the goods, wares, and merchandise contained in a certain store in the state of Nevada owned by him.

The amended bill further alleges the institution, in the state of Nevada, of a collusive suit by a pretended creditor of the respondent, founded on a fraudulent and fictitious indebtedness, with intent to have the proceeds of said trust funds in the state of Nevada seized and sold under execution, and with the design of hindering, delaying, and defrauding the complainant.

If these allegations are true, or even partially true, a stronger case for the appointment of a receiver could not well be imagined. Unless this court can interpose in the most summary manner, the complainant will be remediless, and its decree abortive. The motion to set aside the order for the appointment of a receiver is not based on any denial of the facts alleged in the bills and affidavits, of which a summary has been given. It is rested on the denial of the jurisdiction of a court of equity to afford the relief prayed for.

It is contended that the jurisdiction exercised in the courts of chancery in New York, to entertain what the counsel denominates "a fishing creditor's bill," is entirely the creature of the statute of that state; that independently of those statutes equity could only entertain a creditor's bill filed for the purpose of removing fraudulent impediments or obstructions to the service of an execution against real or personal property, or for the purpose of subjecting equitable assets to the operation of the execution, when the same had

been returned unsatisfied, and the legal remedy thereby shown to have been exhausted. But it is contended that in such cases the equitable assets must be described and indicated in the bill, or in a supplemental or amended bill, if afterwards discovered.

It is also contended that the bill in this case must be conridered precisely as if founded on an ordinary money judgment at law, and that no notice can be taken of the fact established by the original decree that the demand arose out of a fraud and conspiracy of the grossest kind, and that the respondent has been adjudged a trustee of the funds thus fraudulently obtained and appropriated. All jurisdiction to arrest a fraudulent judgment debtor in the execution of an avowed purpose to transfer, secrete, and make way with his property, in order to defeat the claim of his judgment creditor, is denied, unless the creditor can describe and indicate the secreted property; and, even in that case, (unless the position of counsel is misapprehended,) the property so described must be equitable assets which cannot be reached by an execution at law.

But in this state equitable assets *can* be reached by an execution at law. The aid of equity to reach such assets, when known, would not be required, and the jurisdiction of the court to entertain creditors' bills would be limited, if the position of counsel be correct, to bills of the first class above mentioned, viz.: bills filed to remove obstructions or impediments to an execution.

I think it can be shown that the contention of counsel that the equity jurisdiction exercised by the court of chancery in New York was exclusively derived from the Revised Statutes of that state, is an erroneous view of the origin and foundation of that jurisdiction.

The point was elaborately considered by the vice-chancellor in *Storm* v. *Waddell*, 2 Sandf. Ch. 510-12. In that case he observes:

"The practice of filing bills in this court by unsatisfied judgment and execution creditors, which has become so well established and familiar, is usually referred to the Revised

Statutes as to its origin. 2 Rev. St. 173-4. The statute is undoubtedly sufficient to sustain all the argument that was presented in support of the effect of such a suit; but, as I desire to refer to cases prior to that time, when the Revised Statutes went into operation, I will advert briefly to the earlier history of this jurisdiction.

"The power of the court of chancery to aid in removing fraudulent impediments in the way of levying on the personal property liable to execution, or selling the real estate of his debtor, is an old-established ground of jurisdiction, which is not in question here.

"The bill in those cases was auxiliary to the carrying into effect the process of the law courts, and differed from our creditors' suit, now under consideration, in this: that in the suit to set aside a fraudulent conveyance of land, so as to give effect to a judgment, the bill need not allege anything more than the recovery of the judgment; and where it was to remove an obstruction affecting movable property, it was only requisite to allege an execution issued to the county where the property was situated; while in the creditor's bill, against equitable interests and things in action, the creditor must show the issuing of an execution, and its regular return unsatisfied.

"In the case of *Spader* v. *Hadden*, 5 J. C. R. 280, Chancellor Kent, in 1821, sustained a creditor's suit of the description now in use against moneys in the hands of Hadden, transferred to him by the debtor,—the transfer being fraudulent against creditors. This decree was affirmed by the court of errors in November, 1822. 20 John. 554. A majority of the court, with Chief Justice Spencer and Mr. Justice Woodworth, (the latter delivered the prevailing opinion,) concurred in holding that the case was one of acknowledged equitable cognizance, and the reasoning of the judge is applicable as well to the case of *funds being in the debtor's* hands as to the case decided.

"It is true that in *Donavan* v. *Fin*, Hopk. 59-77, decided in November, 1823, the chancellor omitted to follow the result of the decision in *Hadden* v. *Spader*, and viewed the

latter as a case of trust and fraud. But I submit, with great respect, that there was much more in the decision than was acceded to it in *Donavan* v. *Fin.* The goods assigned in *Hadden* v. *Spader* were sold and converted into money five months before Spader recovered his judgment, so that there was no property on which his execution could have been a lien. It was, then, the plain case of a debtor having things in action in the hands of a third person, and equity deemed it unjust that either the one or the other should withhold them from the payment of his creditors.

"The doctrine of *Donavan* v. *Fin* has not been followed in any case since, nor, so far as I have seen, approved by more than two judges. There is abundant evidence that it was not deemed in accordance with the decision of the highest court in *Hadden* v. *Spader.* And, aside from the books, I know from my own practice that it was disregarded prior to the time of the Revised Statutes.

"In the following cases the contrary was decided, or opinions to that effect given: In *Weed* v. *Pierce*, 9 Cow. 722–727, decided by Chancellor Walworth, when circuit judge, sitting in equity, December, 1827; *Beck* v. *Burdett*, 1 Paige, 305, January, 1829; *Chandler* v. *Pettit*, Id. 427, affirmed on appeal in December, 1829, 3 Wend. 618, 621–625; and *Edmeston* v. *Lyde*, 1 Paige, 673, November, 1829.

"In *Wakeman* v. *Grover*, 4 Paige, 23, affirmed 11 Wend. 187, the bill was filed in 1828 to reach the things in action assigned, *as the goods of Grover & Gunn*, and the decree was made against both species of property without discrimination, although the case was most desperately contested throughout. The chancellor repeated the doctrine of the above cases, at page 33 of 4 Paige; and, as recently as in 1844, he reiterated it in *Farnham* v. *Campbell*, 10 Paige, 601. See, also, the revisers' notes, in introducing the provisions on the subject, which are contained in the Revised Statutes. 3 Rev. St. 669, (2d Ed.)

"I may, therefore, assume that by the law of this state, as settled more than 20 years before this case arose, an unsatisfied execution creditor had a right to file a bill in this court

to compel payment of his debt out of the equitable interests and things in action of the judgment debtor. *Storm* v. *Waddell*, 2 Sandf. Ch. 510–12."

The authorities cited by the assistant vice-chancellor strongly support his reasoning; and I am justified in holding that, by the ancient usages of courts of equity as understood in New York prior to the Revised Statutes, chancery "would assist a judgment creditor at law in discovering and reaching personal property which had been placed in other hands; and that it made no difference whether that property consisted of *choses in action* or money or stock." 2 Kent's Com. 561.

In *Donavan* v. *Fin*, the point decided was that "where the subject of a suit is exclusively legal, equity has no jurisdiction to enforce or give a better remedy;" that is, to seize upon and apply to the payment of the debt equitable assets, which could not be reached by execution at law.

In *Pettit* v. *Chandler*, 3 Wend. 624, the same point arose incidentally, though it was not decided; but the chief justice said "*his impressions were* that, *under the existing law* (1829) a defendant is *not* bound to answer as to property which never was within reach of an execution; that he could only be called on to respond as to such property as he has fraudulently withdrawn from the operation of an execution."

In *Hadden* v. *Spader*, Mr. Justice Woodworth held that a judgment creditor, after exhausing the remedies given by law, could reach the trust property of his debtor by the aid of a court of equity, and that he could resort to the debtor's *stocks* and *debts* due to him, *even when the stocks were not purchased or the debts created by means of the property fraudulently withdrawn from the judgment of the creditor*. To these views Chief Justice Spencer gave his explicit sanction.

Chancellor Sandford was of opinion, as we have seen, that the relief could only be given in cases which were themselves of equitable jurisdiction involving fraud or trust, or seeking to subject to the satisfaction of a judgment property in itself liable to execution, by removing a conveyance which operated as a fraudulent impediment to the execution.

In *Pettit* v. *Chandler*, the chief justice, Mr. Justice Marcy,

and Mr. Justice Sutherland declined to express any final opinion as to this contested boundary of jurisdiction, for the power to grant relief to the utmost extent it was pushed in the case of *Hadden* v. *Spader* was about to become in a very few days a part of the system of jurisprudence of New York "by legislative *recognition* or *adoption*." This case was decided in December, 1829. The Revised Statutes of New York went into operation January 1, 1830.

The case at bar does not demand any attempt on my part to determine this disputed question as to the jurisdiction of courts of equity upon which so eminent judges have differed, for the statute of this state permits all choses in action and equitable assets to be reached by execution of law. The objection, therefore, to the jurisdiction chiefly relied on by Chancellor Sandford, in *Donavan* v. *Fin*, cannot here be raised. The bill, moreover, in this case is not a bill to reach equitable assets alone. It is a bill for an injunction and receiver to prevent the defendant from secreting, conveying away, and converting into money, property which is justly subject to execution, including property which is, in whole or in part, the proceeds of the property fraudulently obtained and converted by him. It seeks to arrest and baffle the execution of an avowed purpose to evade the decree of this court and to render it fruitless to the bankrupt's creditors whom he has defrauded. But the question upon which the conflict of opinion arose in New York seems, so far as the United States courts are concerned, to be authoritatively settled.

In *Board of Public Works* v. *Col. College*, 17 Wall. 530, the supreme court says: "The jurisdiction of a court of equity to reach the property of a debtor justly applicable to the payment of his debts, even where there is no specific lien on the property, is undoubted."

It is objected that even if a court of equity has jurisdiction to reach assets of every description in aid of a judgment creditor, it can only do so where the assets are indicated in the bill, and that it has no authority upon mere general allegations, such as those contained in this bill, to enjoin the defendant, or to compel an assignment of all his property to a

receiver appointed by the court. It is contended that the mode of proceeding adopted in this case is peculiar to the state of New York, where it grew up under the rules framed by Chancellor Walworth, to carry into effect the provisions of the Revised Statutes of that state with regard to creditors' bills. But it would seem that Mr. Justice McLean entertained bills similar to the bill in this case without hesitation. In *Lamon* v. *Clark*, 4 McLean, 18, the bill alleged that "the defendant had equitable things in action and other property which cannot be reached by execution, and that he also *had debts due to him by persons unknown*." These allegations are as general and unspecific as those contained in the bill under consideration, but the bill was, nevertheless, entertained. It is asserted by counsel that this jurisdiction was taken under a statute of Michigan similar to that of New York. But the court expressly repudiated the notion that a state statute can confer jurisdiction in equity upon the courts of the United States, although the latter may adopt modes of proceeding and particular remedies, when the cause is within their jurisdiction, and the proceedings adopted are conformable to the general principles by which courts of equity are governed. And with respect to the case before it the court observes: "The jurisdiction is appropriate to chancery, and *may be exerercised where there is no special statute*. Similar relief is given in England. 1 Vernon, 398; 1 P. Wms. 445; 2 Dickens, 575; Ambler, 79–455; 20 John. 563; 2 John. Ch. 283–296; 4 John. Ch. 691."

In *Pettit* v. *Chandler*, before cited, the bill, after alleging judgment obtained, execution issued, and return of *nulla bona*, proceeded to state that "for a long time before the recovery of the judgments Pettit had transacted, in his own name, business to a large amount in New York, and was possessed of great property, and that he had not pretended or given out that he had become insolvent, or had lost any property, but that just before the recovery of the judgments in favor of the complainant he had suddenly stopped doing business in his own name with the avowed intention of preventing the complainant from obtaining satisfaction of his judgments; that

he had so placed his property that none of it was left visible, so as to be taken upon execution, with the intent to defraud the complainant; and it particularly charged that Pettit, at the filing of the second supplemental bill, *was possessed of real or personal property, or other property of some name or nature*, to a large amount; that he was possessed of or entitled to public stocks, to *stock in banks*, or other incorporated companies, and to rents in real estate; that he held bills of exchange, promissory notes, and choses in action to a large amount; and that property, *real or personal*, was held by others in trust for him, and by colorable title. The bill stated and enumerated particular acts of fraud which it charged upon the defendant, and concluded by praying a full answer and discovery, and that the defendant might be decreed to satisfy the judgments obtained against him, and that sufficient of his property be set apart for that purpose."

The striking similarity of these allegations to those of the bill under consideration cannot escape notice. The case came up on appeal from an order of the chancellor allowing exceptions to the answer. It was argued by eminent counsel, but it does not appear to have occurred to them, or to any member of the court, that the bill was demurrable because it did not particularly set forth and describe the property which it alleged had been concealed or conveyed away in trust for the defendant under colorable title, and the discovery of which, and its appropriation in satisfaction of the complainant's judgment, was prayed for. Mr. Justice Marcy, in delivering his judgment in this case, says: "Confining the jurisdiction of the court of chancery to the narrowest limits that have ever been assigned to it, power it certainly has, and exercises daily, of requiring answers to such allegations as the appellant in this case has wholly omitted to answer, or has answered imperfectly." Page 623. This case was decided in December, 1829.

In *Waddell* v. *Storms, ubi supra*, the practice in cases of creditors' bills is stated as follows: "Upon filing the bill an injunction is taken out, and served with the subpœna to answer, restraining the debtor from parting with *any* of his

property or effects until the further order of the court; and, for the better protection of the property and its conversion into money, a receiver is speedily appointed, who, under the order of the court, is vested *with all such property*, or with sufficient specific portions of it to pay the complainant's debt and costs, and all prior claims upon the same; and the debtor is compelled to assign and deliver such property to the receiver under the direction of a master of the court."

In *Bloodgood* v. *Clark*, 4 Paige, 477, Chancellor Walworth says: "In these cases of creditors' bills, where the return of execution unsatisfied presupposes that the property of the debtor, if any he has, will be misapplied, and entitles the complainant to an injunction in the first instance, it seems to be almost *a matter of course* to appoint a receiver to collect and preserve the property pending the litigation; and where the sworn bill of the complainant shows that he has an equitable right to all the funds and property of the defendant to satisfy his debt, and if the right of the complainant is not denied by the defendant in answer to the application for a receiver, there can be no good reason why the complainant should not have a receiver appointed to preserve the property from waste and loss. Indeed, this court has already declared that it is the duty of a complainant, who has obtained an injunction upon such a bill restraining the defendant from collecting his debts or disposing of property which might be liable to waste or deterioration, to apply to the court and have a receiver appointed without any unreasonable delay. See *Osborn* v. *Heyer*, 2 Paige, 343. It is no sufficient answer to such an application to say there may not be any property to protect, as the complainant proceeds at the peril of costs if there be no property; and, if there is nothing for the receiver to take, the defendant cannot be injured by the appointment."

In *Edmeston* v. *Lyde* the chancellor says: "The principle being established that every species of property belonging to a debtor may be reached and applied to the satisfaction of his debts, the powers of this court are perfectly adequate to carry that principle into full effect." 1 Paige Ch. 641, decided in 1829. See, too, 25 Barb. 663.

The text-writers lay down the same principle *passim.* Thus Barbour says : "Upon a creditor's bill every species of property belonging to a debtor may be reached and applied to the satisfaction of his debts, and his debts, choses in action, and other equitable rights may be assigned or sold pending the decree of the court for that purpose.   2 Barb. Ch. Pr. 152. Under the practice of the New York courts of chancery it was held that the order of reference should authorize the master to appoint a receiver of all the property, equitable interests, things in action, and effects belonging to the debtor.   *   *   * It should also require the defendant to assign to the receiver, under the direction of the master, *all* his property and effects." High on Rec. § 415; 1 Barb. Ch. 309, 315–17; 1 Sandf. 723.   But a discretionary power is sometimes exercised as to the amount of the debtor's property to be assigned.   High on Rec. § 429.   He was compelled, as we have seen, to assign even when he denied that he had any property.   *Bloodgood* v. *Clark, supra.*

Until the statute of 1 and 2 Victoria, *c.* 110, § 20, writs of execution were unknown to the English courts of chancery. Daniell, Ch. Pl. and Pr. 1042.

"The decrees of the court were enforced by process of contempt, and the party entitled to the benefit of the decree might obtain a writ of sequestration directing the commissioners therein named to sequester the personal property of the defendant, and the rents and profits of his real estate, until he had cleared his contempt.   Originally, this process was merely used as a means of coercing the defendant by keeping him out of the possession of his property; and the practice of applying the money received by the sequestrators in satisfaction of the sum decreed to be paid is of comparatively modern origin.   This, however, as we shall see in the next section, has become the usual course of procedure, and the court will now, after a sequestration has been issued, to enforce a decree for the payment of the money, order the sequestrators to apply what they have received by virtue of the sequestration in satisfaction of the duty to be performed." Daniell, Ch. Pl. and Pr. 1032–3.

The counsel for defendant cites no authority in support of his position that the practice of entertaining "fishing" bills to reach assets not specifically described in the bill, and of appointing a receiver over all the property of the defendant, is entirely the creation of the New York Revised Statutes, and of the rules framed under it by Chancellor Walworth. The provisions referred to were introduced into the Revised Statutes of New York chiefly to set at rest the *questio vexata* which had been raised by the cases of *Hadden* v. *Spader* and *Donavan* v. *Fin*, already noticed. See Revisers' Notes, 3 Rev. St. 669, (2d Ed.) Authority was given to compel, in aid of an unsatisfied judgment creditor, a discovery of any property, money, or things in action due to the debtor or held in trust for him, and to prevent the transfer of any such property, etc., and to decree satisfaction out of such property, "*whether the same was originally liable to be taken in execution or not.*" The doctrine of *Hadden* v. *Spader* was thus explicitly recognized or adopted by legislation; but the powers of the court of chancery were not otherwise enlarged. It was merely authorized to do with regard to assets not originally liable to execution what it had always been conceded it had a right to do with regard to stocks, debts, etc., purchased by means of property *fraudulently withdrawn* from execution.

The fact, therefore, that Chancellor Walworth adopted, and, until the court of chancery was abolished, maintained, the rules in question, is the strongest argument to show that the practice thus established was agreeable to the general principles and methods of equity procedure. Certainly the authority to entertain "fishing" bills to reach undescribed assets, and to appoint a receiver of all the property of the defendant, is not in terms conferred by the statute.

The appointment of a receiver of all the property of the defendant is in truth, as we have seen, in the nature, not of an attachment, but of a sequestration, which, by the ancient practice of the court of chancery in England, issued, as of course, upon the failure of the defendent to comply with the decree, (Daniell, 1047–1048;) and the process of sequestration is still in use in England. Id. 1042. We have also seen

that the court will now, where a sequestration has been ordered to enforce a decree for the payment of money, order the sequestrators to apply what they have received, by virtue of the sequestration, in satisfaction of the decree. When, therefore, the aid of equity was invoked in behalf of an unsatisfied judgment creditor, and it was settled that all his property, choses in action, debts due him, etc., could be reached, the order for the appointment of a receiver, and for the compulsory assignment to him by the defendant of all his property, was in entire accordance with the ancient usages of the court of chancery, when compelling obedience to its own decree.

The counsel for the defendant insists with much earnestness that the bill under consideration is identical with an ordinary creditor's bill, and is to be treated precisely as if brought in aid of an unsatisfied judgment at law. But in such case chancery has no jurisdiction of the original demand. It can only interpose after the demand has been established at law, and after it has been shown by the return of an execution unsatisfied that the complainant is remediless at law. But in the case at bar the original suit was of equity cognizance. The decree was obtained in this court; and perhaps a writ of sequestration might have issued at once upon the failure of the defendant to comply with the decree, as it certainly could have done if the decree had been for the specific performance of some act. Equity rule 8, Sup. Ct. However this may be, no doubt can, I think, be entertained as to the power of the court to arrest and baffle the defendant, who has already been adjudged guilty of a flagrant fraud in his attempt to consummate it and secure its fruits, in avowed defiance and contempt of the court.

Says Mr. Chancellor Walworth: "Where such a fraud has been actually committed by a debtor, where he has intentionally placed or even left that property, which ought to have been devoted to the payment of his honest debts, in the hands of a third person, with a view to evade the justice of the law, and this court, by its ordinary course of proceedings, can reach such property without doing injustice to any, it does not deserve the name of a court of equity if it has not juris-

diction to afford relief to the injured creditor." *Wend* v. *Pierce,* 9 Cow. 724. Still less would it deserve that name if it should refuse that relief in the only form in which it can be effectual—viz., by injunction and order for a receiver—on the ground that the defendant has so far carried out his threat to secrete and make way with his property that the complainant is unable to find it or describe it in his bill.

If this court refuses to interpose until, by bill of discovery or proceedings supplementary to execution, the creditor is able to specify and describe the character of the property, it, in effect, invites the defendant to frustrate its decree, by sending the property or its proceeds out of the jurisdiction, or by conveying it to innocent or pretended innocent purchasers, or otherwise disposing of it in such a way as to place it beyond the reach of the court.

Motion denied.