### CLUTE & MEAD *vs.* BOOL.

Where a father by his will directed his executors to set apart out of his personal estate a sum sufficient, at six per cent, to raise an annuity of $400, which annuity he directed to be paid to his son for life, in quarter yearly payments; and directed the principal of the fund to be paid to the issue of the son, if he should leave any, at his death, with a limitation over to others in case he died without leaving issue; *Held*, that the annuity to the son was inalienable under the provisions of the revised statutes; and that it could not be reached by a creditor's bill against the son, in advance, or before the quarterly payments had become due; nor would it pass to an assignee under the insolvent laws.

The fifty-seventh section of the article of the revised statutes relative to uses and trusts does not authorize the complainant in a creditor's bill to reach the interest or income of a cestui que trust in a trust fund, which is necessary for his support and maintenance, although such cestui que trust is able to and might support himself by his own labor and exertions. The object of that section is to prevent an accumulation of the surplus interest or income not wanted for the support of the cestui que trust, where no valid direction for such accumulation has been given, by making such surplus liable to the claims of his creditors.

Where an express trust is created to receive the interest or income of trust property and to apply it to the use of a person from time to time, the surplus beyond what is necessary for his support and maintenance may be reached by a creditor's bill against him, after such interest or income has become due.

THIS case came before the court upon an appeal from a January 21. decretal order of a vice chancellor. The bill was filed by the complainants as judgment creditors of the defendant, to reach, among other things, his interest in an annuity of $400 given him by the will of his father, who died fifteen days before the filing of the bill in this cause. The will directed the executors to set apart from the testator's personal property a sum sufficient, at an interest of six per cent per annum, to produce the annuity, and to pay the annuity to the defendant out of such interest in quarter yearly payments during his natural life; and to pay the principal of the fund to his issue if he died leaving issue; but if he died without leaving issue, the fund was limited over to other persons named in the will. The bill charged, among other things, that the defendant was less than thirty years

of age, in good health, of sound constitution, perfectly able to support himself by honest industry, and well capacitated to accumulate property if inclined to do so. It also charged that he was in no respect destitute of the will, discretion, or power, to manage property for himself with ordinary discretion and forecast, and was in all respects competent and of abundant discretion to hold and manage property for himself discreetly and judiciously. The defendant in his answer admitted that he was but twenty-two years of age at the time of filing the bill, and that he was in good health; but alleged that he had no trade, business or calling, whereby he could earn a livelihood; that he lived with and was supported by his father at the time of his death; and that from that time until the putting in the answer, about ten months afterwards, he had lived with his stepmother or some other member of the family, who had supported him. The complainants excepted to the answer for insufficiency, 1st. Because he had not answered whether he was of sound constitution; 2d. That he did not answer whether he was able to support himself by ordinary industry if inclined to do so; and 3d. That he did not state in his answer whether he was destitute of the will, discretion, or power to hold and manage property for himself with ordinary discretion and forecast. The master reported that all these exceptions to the answer were well taken; and the vice chancellor confirmed the decision of the master, upon exceptions taken to the report. From the order of the vice chancellor overruling the exceptions to the master's report the defendant appealed.

*C. Edwards*, for the appellant.

*J. S. Bosworth*, for the respondents.

THE CHANCELLOR. No written opinion appears to have been delivered by the vice chancellor, and I am therefore not aware of the grounds upon which his decision and the decision of the exception master were based. But the

1840.

Clute
v.
Bool.

complainants, in this part of their bill, and by their two first exceptions to the answer, appear to have proceeded upon the supposition that the interest of the cestui que trust in an annuity, payable out of the future income of personal estate bequeathed to trustees to invest and to receive the income thereof for his use, can be reached by a decree, in anticipation, and applied to the payment of his debts ; if the cestui que trust is at the time of filing the bill of sound constitution and able to support himself by his own labor or industry. For they filed their bill to reach the defendant's interest in this legacy, within a few days after the death of his father, and before it was possible that any income should have been received by the trustees, and long before the first quarterly payment of the annuity became due and payable.

The complainants are evidently wrong in supposing that the future instalments of the annuity can be so reached, unless the payment of such an annuity, in the manner directed by this will, is the payment of a gross sum, or of several gross sums, out of the income of the trust property, within the intent and meaning of the last clause of the sixty-third section of the article of the revised statutes relative to uses and trusts. (1 *R. S.* 730.) Although that section relates to the income of real estate only, it is made applicable to a similar interest in the income of personal estate, by a subsequent provision ; which directs that limitations of future or contingent interests in personal property shall be subject to the same rules as are prescribed in relation to future estates in lands. (1 *R. S.* 773, *tit.* 4, § 2.) And all dispositions of the rents and profits or income of property to accrue and be received subsequent to the execution of the instrument making such disposition, that is, subsequent to the death of the testator, where such disposition is made by will, are considered future estates and to be governed by the same rules. (1 *R. S.* 726, § 36. 7 *Paige's Rep.* 233.)

In the case of Wm. James' will I was inclined to the opinion, though it did not become necessary for me to absolutely decide the question, that an annuity payable out of

the rents and profits or income of trust property was a trust to pay several sums in gross, within the meaning of the last clause of the sixty-third section above referred to ; and that the interest of the annuitant was not therefore inalienable, but that he might sell or assign it as he pleased, or receive the annuity in anticipation. But as the Chief Justice and Mr. Justice Bronson, as well as Senator Maison, who delivered opinions in that cause upon the appeal to the court for the correction of errors, all concurred in saying that an annuity payable out of the rents and profits of the trust estate was not an alienable interest, under the sixty-third section of the article relative to uses and trusts, I conclude my former impressions on this subject were wrong. (*See their opinions in Hawley* v. *James*, 16 *Wend. Rep.* 118, 165, 262.) If this be so, it is evident that none of the exceptions of the complainants were well taken. But if the interest of the annuitant is inalienable by himself before the annuity has become due and payable, it could not have been the intention of the legislature that it should pass to his creditors by an assignment under the insolvent acts. Or that it should be reached in advance by a creditor's bill, before it became due ; and of course before it could be known whether it might not be wanted for his support, when the income of the estate or fund was received by the trustees, and when the time arrived for paying the instalment over to him or applying it to his use. In that view of the case it is perfectly immaterial whether the defendant's health and constitution are now good or not ; or whether he is now able by labor to earn a livelihood. On the contrary, if the life interest of the defendant in the fund is of such a nature that he can sell and dispose of it or control it as he pleases, without restriction or limitation, then, according to the decision of this court in the case of *Hallett* v. *Thompson*, (5 *Paige's Rep.* 583,) the whole annuity may be reached at once and applied to the payment of his debts, without reference to his present or future wants.

Besides ; I do not understand the construction of the fifty-seventh section of the article of the revised statutes relative

1840.

Clute
v.
Bool.

to uses and trusts, to be that the whole of the provision for his support may be taken by his creditors if he can earn a living by his labor. But the intent of the legislature was that the trustees should not be permitted to accumulate the surplus rents or income which were not wanted for the support of the cestui que trust, in violation of the provisions of the revised statutes, if no valid and legal direction for such accumulation was given. And that such surplus as might accrue from time to time should be liable to the claims of his creditors, after it was ascertained that it was not wanted and had not been applied to his support as it became due ; whether it remained in the hands of the trustees or had been received by the cestui que trust. As this section was not originally reported by the revisers, but was introduced by the legislature, in the course of the revision, in connection with the exception as to trust property, contained in the section relative to the power of this court to reach the property of a debtor, (2 *R. S.* 173, § 36, 39,) which was also introduced by the legislature, they must be construed together. Taking the two provisions together, I think the above is their true construction. And I have not been able to find any allegation in the complainant's bill that this annuity of $400 was an unreasonable allowance for the support of the defendant in his situation in life ; although he might probably have earned his food and clothing as a day laborer, if his father had died a poor man instead of leaving an estate of $20,000, as alleged in the bill.

The allegation upon which the third exception is founded is perfectly irrelevant and immaterial. And the defendant therefore was not bound to answer the same ; whether that allegation was introduced for the purpose of showing that he was capable of earning his own support, or to show that his father might have reasonably entrusted him with the management and control of a part of his large estate, instead of putting it under the care of trustees, if he had not anticipated that it would in that case have been swept away by the defendant's creditors. The motive of the parent in creating such a trust cannot be inquired into here ; as he

had a right to dispose of his property by will as he pleased, provided he did not violate any rule of law. In the recent case of *Gott* v. *Cook*, (7 *Paige's Rep.* 521,) I arrived at the conclusion that the person who creates a trust to receive the rents and profits or income of property for the use of another, might in the creation of such trust direct the manner in which such rent or income should be applied for the use of the beneficiary. And that he might therefore direct that when such rent or income was received by the trustee, from time to time, it should be paid over to the cestui que trust, to buy his own food or clothing ; instead of requiring the trustee to purchase every article himself. If I was right in that case, this was a valid trust ; and the ability of the defendant at the death of the testator, or afterwards, to manage property if he had the control of it, cannot render it invalid. On the contrary, if the trust is void, as being unauthorized by the revised statutes, then the life interest of the defendant in the fund which is to produce this amount belongs to the legatees named in the fifth clause of the will, as a part of the testator's residuary estate. (2 *Will. on Ex'rs*, 895.   6 *Paige's Rep.* 608.)   Or the interest or income of the fund, until the defendant shall have issue to take the same, belongs to the residuary legatees named in the fifth clause ; as the persons who are now presumptively entitled to the next eventual estate or interest in the fund, under the eighth clause of the will.   (1 *R. S.* 626, § 40.   *Idem*, 773, § 2.)

Another reason why none of these exceptions for insufficiency should have been allowed, is, that an answer to the allegations in the bill upon which they are founded, even if these allegations are material, was wholly unnecessary and could not possibly benefit the complainants. Exceptions for insufficiency are only allowed for the purpose of obtaining a discovery of something which may benefit the complainant in the suit ; and not for the mere purpose of making costs. The answer in this case was put in by the defendant in June last, about a month after the amendments to the 17th rule of this court went into operation.   One of

those amendments is, that where any thing is alleged in the bill as the act or deed of the defendant or as a matter within his personal knowledge, if he does not deny such allegation in his answer, either positively or according to his recollection and belief, the allegation in the bill shall be considered as admitted for all the purposes of the suit, notwithstanding the usual general traverse in the answer. The object of this amendment of the rule of pleading was to save the expense and delay of excepting to the answer, to obtain a further discovery in such a case, or of filing a replication and proving the fact alleged. And in this case, as the allegations upon which the exceptions were based were matters necessarily within the personal knowledge of the defendant, if the facts existed as charged in the bill, and are not denied in any way in the answer, except by the general traverse, they are admitted for all the purposes of this suit.

The order appealed from must therefore be reversed with costs, and the exceptions to the master's report are allowed. The complainants must of course pay the costs of the reference and the costs of the hearing before the vice chancellor on the exceptions to the report; and the proceedings are to be remitted to the vice chancellor.