SCHENECTADY GENERAL TERM, January, 1849.  *Paige,*
    *Willard, and Hand,* Justices.

### STEWART *vs.* McMARTIN.

Where a grantor, by a deed of trust, directed the trustees named therein to invest
a sum of money, and, after the death of J., to pay the interest thereof quar-
terly to M. B. and J. B., and to pay the principal sum at the deaths of M. B.
and J. B., to their children respectively, and in case either of the *cestuis que*
*trust* should die without leaving issue, her share to go to the children of the
survivor; *Held* that the interest of M. B. in the annuity, after the death of J.
and of J. B. without leaving issue, was not liable to the claims of her creditors,
and could not be reached by a creditor's bill.

Where a trust is created by one person for the benefit of another, and the fund
held in trust proceeds from the person making the trust, and the *cestui que trust*
has no control over the trust fund, but has only a beneficial interest in the in-
come thereof, which the donor intended should be applicable to her support and
maintenance, such trust comes within the terms of the exception in the 38th
section of the title of the revised statutes relative to the court of chancery, as
well as within its spirit and meaning, although the interest of the cestui que
trust is not *rendered* inalienable by the 63d section of the article relative to
uses and trusts.

A devise in a will executed previous to the revised statutes, of land to trustees,
in trust to permit M. so long as she shall live, or during the minority of her
youngest child, to enjoy the rents and profits of the land, for her benefit and the
maintenance of the children, and directing that after M.'s death or the arrival
of the youngest child at the age of 21, the lands shall be sold, or divided equally
between M. and the testator's then surviving children, is not void as being an
illegal suspension of the power of alienation.

A right of dower, before assignment, is a chose in action, within the meaning of
section 39 of the title of the revised statutes relative to the court of chancery,
and may be reached by a creditor's bill.

IN EQUITY.  This cause was heard on bill and answer.
The bill was an ordinary creditor's bill, in the usual form.
The bill called for a discovery of the defendant's property, upon
oath.  The defendant, by her answer, discovered that her fath-
er Thomas Bell, of Glasgow, Scotland, in 1802, conveyed all
his property, real and personal, to three trustees, and among
other things, directed his trustees to lend out £500 sterling,
upon hereditable security and to take the securities in their
own names for the behoof of his son James Bell, or to make
payments of the annual interest thereof to him during his life,

either half-yearly, quarterly or oftener, as the trustees migh think proper; and in the event of his death without leaving *a widow or lawful issue,* the trustees were directed to lend out the said £500, sterling for behoof of the defendant and Jean Bell, daughters of the said Thomas Bell, and to make payments to them quarterly of the interest arising thereon exclusive of the *jus mariti* of the defendant's husband, and to make payment of the principal sum at the death of the defendant and Jean Bell, to their children, each family drawing one half, and failing either of them by decease without leaving lawful issue of their body, then wholly to the children of the survivor, payable upon their attaining the years of majority. Thomas Bell died in September, 1802. Jean Bell died in January, 1821, without issue. James Bell died in December, 1832, leaving a widow but no children ; and his widow died in 1840. The defendant further stated that the trustees had paid to her agent on account of said annuity or the interest of the said £500, up to May, 1840, £35,2,7 sterling; that since the death of James Bell's widow the annuity payable to her amounted annually to £25 sterling; and that she received the same up to the month of May, 1844; that on the 15th day of May, 1845, there was due her for such annuity £25, 5 8 for which she received in October, 1845, a certificate of deposit in the Commercial Bank of Scotland, to the credit of Prime, Ward & King, for the use of the defendant, in the form of a draft by said bank on said Prime, Ward & King, in favor of the defendant, which had not been paid or presented for payment. The defendant further stated that her youngest child became of age on the 22d of October, 1845; and she claimed that the said annuity could not by virtue of sections 38 and 39 of the revised statutes, (2 *R. S. p.* 179,) be reached by her creditors. The defendant also stated in her answer that her husband, Finley McMartin, died in September, 1825, seised of real estate, leaving 11 children by the defendant him surviving; that all of such children were living ; that her husband, on the 31st of September 1825, made his will and devised to three persons as trustees all his lands, hereditaments and messuages, with

the rents, issues and profits therefrom, in trust to suffer and permit the defendant, so long as she should live, or during the minority of their youngest child, for her own benefit and the maintenance of the children, to enjoy all the rents and profits of the lands devised; and that after the defendant's demise or the arrival of the youngest child to the age of 21 years, the said lands should be sold or divided equally between the defendant and the testator's then surviving children. And the testator directed in his will that the said trustees should, when his youngest child became of full age, sell and convey in fee simple all his said lands, &c. The defendant further stated in her answer, that since the death of her husband, she had had the management of the real estate of her husband, and had received the rents and profits thereof, and had applied the same, as well as the annuity received by her as aforesaid, to the support of herself and children; that no dower had ever been assigned to her; that she had never claimed any dower in the real estate of her husband, and was advised that she had no right of dower therein. And the defendant further stated in her answer that she had no means of support except the aforesaid annuity received from Scotland and her interest in the real estate of her husband. And she claimed that her interest in the real estate of her husband could not be reached by her creditors.

*S. Belding, Jun. & C. B. Cochran,* for the plaintiff.

*D. P. Corey & J. W. Van Derveer,* for the defendant.

*By the Court,* PAIGE, P. J. The first question which arises upon the pleadings in this cause is, whether the beneficial interest of the defendant in the income of the £500 sterling directed by the trust deed of her father, Thomas Bell, to be invested by the trustees named therein, in the event of the death of James Bell without leaving a widow or lawful issue, is liable to the claims of her creditors. Thomas Bell directed his trustees to lend out £500 sterling, and to take the securities in their names, and to pay the annual interest thereof to his son James Bell during

his life; and in the event of his death without leaving *a widow* or lawful issue, to lend out the same money and pay the interest thereof quarterly to the defendant and her sister, Jean Bell, and to pay the principal sum at the death of the defendant and Jean Bell to their children respectively, and in case either died without leaving lawful issue of her body, her share to go to the children of the survivor, payable on their attaining the years of majority. No objection is made by either the counsel of the plaintiff or of the defendant to the validity of this trust. Both, in their written arguments, concede its validity, and that the defendant is entitled to at least a part of the income of the £500 sterling. There is no evidence in the case showing what the laws of Scotland are, on the subject of trusts. By the articles of union agreed to by the parliaments of England and Scotland in 1707, (6 Anne,) it was provided that the municipal laws of Scotland should remain in force until altered by the parliament of Great Britain. And these laws not having, except in a few instances, been altered, still continue in force. They differ from the laws of England. And the common law of the latter country has no force or validity in Scotland. (1 *Black. Com.* 95 *to* 99.) The law of the place where a contract is made or is to be performed, governs as to the nature, validity, construction and effect of the contract. If valid there, it is valid every where, with the exception of cases in which the contract is immoral, or unjust, or in which the enforcement of it in a state would be injurious to the rights, interest, or convenience of such state or its citizens. (*Andrews* v. *Herriott*, 4 *Cowen*, 517, *note*.) The *lex domicilii* governs as to the disposition of personal property. Its transmission by succession, or the act of the owner, follows the law of the domicil of his person, and not the law of the country where the property is. A will of personal property must be executed according to the *lex domicilii*. If void by that law, it will not pass personal estate in another country, although executed with all the formality of its laws. (4 *Cowen*, 517, *note*. 4 *John. Ch.* 460. 3 *Id.* 190. 5 *Paige*, 596.) The *lex rei sitæ* governs real property; the title to which can be acquired and lost only in the manner pre-

Stewart v. McMartin.

scribed by the law of the country where it is situated. (4 *Cow.* 527.) And it is a general rule that the laws of a foreign country must be proved, and that our courts will not take judicial notice of them. (*Id.* 525, 6, *note.*) What effect the leaving of a widow by James Bell, on his death, has, by the laws of Scotland, on the interest of the defendant in the income of the £500, does not appear. As no question is raised in the case, as to the validity of the trust, or of the provision in favor of the defendant, I will regard the trust as valid, and will deem it conceded that the defendant is entitled to her share of the income of the £500, according to the terms of the trust deed. By the terms of that deed the defendant is entitled to one half of the income of the £500, payable quarterly during her life. The question whether the children of the defendant are entitled to a moiety of the £500, the income of which was given to Jean Bell, she having died before the occurrence of the contingent event on the happening of which her interest in the income was to vest, does not arise in this case. The provisions of chap. 1 of part 2 of the revised statutes in relation to real property, &c. are by sec. 11 (1 *R. S.* 750,) expressly rendered inapplicable to any deed or will which shall have taken effect before that chapter should be in force as a law. (1 *R. S.* 773, §§ 1, 2, 1*st ed.*) Therefore section 63, (*Id.* 730,) rendering the interest of a *cestui que trust* in a trust, &c. inalienable, would not have been applicable to the interest of the defendant in the trust in question, even if the validity and construction of the deed of trust were to be determined by the laws of this state. Under the laws of this state in force before the adoption of the revised statutes, the beneficial interest of the defendant in a moiety of the income of the £500, after the same became a vested interest, would, sections 38 and 39, (2 *R. S.* 174,) being out of the question, pass to her assignees in bankruptcy or under our insolvent laws, or to a third person by her own voluntary assignment, and consequently it could be reached upon a creditor's bill. (*Bryan* v. *Knickerbacker,* 1 *Barb. Ch. Rep.* 430, 431.) In the case cited the fund held in trust proceeded from and was created by the debtor himself. That case, therefore, was not

embraced by sections 38 and 39 of the revised statutes. (2 *R. S.* 174.)    These sections except from the operation of a creditor's bill, property held in trust for the debtor, where the trust has been created by, or the fund so held in trust has proceeded from, some person other than the defendant himself.    In this case the trust was created by, and the fund held in trust proceeded from, Thomas Bell, the father of the defendant, and not from the defendant herself.    These sections of the revised statutes are applicable to all trusts, whether created before or subsequent to the adoption of these statutes.    It being conceded that there is a valid trust in this case, created by a third person for the benefit of the defendant, and the fund held in trust having proceeded from such third person, such fund cannot be reached by the plaintiff's creditor's bill.    In *Bryan* v. *Knickerbacker*, (1 *Barb. Ch. Rep.* 427, 431,) the chancellor expressly forbears to pass upon the question, whether the creditors of the debtor could have reached his interest in the trust property in that case, if the trust fund had proceeded from, or been created by, some person other than himself.    But the plaintiff's counsel contend that the annuity or income payable to the defendant, is no part of the trust fund protected by the statute, and that as soon as it becomes due and payable, it is liable to the claims of her creditors.    Such a construction would render the 38th and 39th sections of the revised statutes (2 *R. S.* 174) entirely nugatory.    When a trust is created for the support and maintenance of the cestui que trust, the only interest the cestui que trust generally has in the trust fund is in the income thereof; and if, the moment such income accrues, and is payable to the cestui que trust, or is applicable to his use, it can be intercepted by his creditors and applied to the payment of his debts, the whole object of the trust will be defeated.    Where an express trust is created under section 55 of the revised statutes (1 *R. S.* 728) to receive the rents and profits of lands, or the income of personal property, and apply the same to the use of any person, or to pay the same over to the cestui que trust after they have accrued and been received by the trustee, a sum necessary for the support and education of the cestui que trust

cannot be reached by his creditors, either by anticipation, or after the rent or income has actually accrued, whether it remains in the hands of the trustee or has been received by the cestui que trust. (1 *R. S.* 729, §§ 55, 57, 63. *Clute* v. *Bool*, 8 *Paige*, 86, 87. 1 *Barb. Ch. Rep.* 427.) It is only the surplus beyond the sum necessary for the education and support of the cestui que trust, after it is ascertained that it is not wanted, and has not been applied to his support as it became due, that is liable in equity to the claims of creditors. (8 *Paige*, 87. 1 *R. S.* 729, § 57.) Sections 38 and 39 (2 *R. S.* 174) ought at least to receive a construction as favorable to the cestui que trust as that given to sections 55, 57 and 63. (1 *R. S.* 729, 730. *Hallett* v. *Thompson*, 5 *Paige*, 587.)

It is not pretended in this case that the annuity payable to the defendant under the trust deed of her father is more than is necessary for her support. The defendant, in her answer, states that this annuity and her interest in the real estate of her husband, are her only means of support. I therefore conclude that this annuity is not liable to the claims of the creditors of the defendant, and that it cannot be reached by the plaintiff's bill.

I am aware that the chancellor, in *Hallett* v. *Thompson*, (5 *Paige*, 586,) intimates that the exception contained in the last clause of the 38th section of the revised statutes relative to the court of chancery, (2 *R. S.* 174,) applies only to trusts where the interest of the cestui que trust in the trust property is, under the 63d section of the article relative to uses and trusts, inalienable. In that case the will took effect after the adoption of the revised statutes, and the debtor had the absolute control of the trust fund itself, sought to be reached by his creditors. It was not the case of a trust to secure to the legatee a support out of the interest of a trust fund which should be inalienable by the cestui que trust; but a case where the fund itself was perfectly under the control of the debtor, and who could obtain payment thereof whenever he pleased. In this case the defendant has no control over the trust fund. She has only a beneficial interest in the income thereof; which the donor undoubt-

edly intended should be applicable to her support and mainte-
nance. It comes within the terms of the exception of the 38th
section, (2 *R. S.* 174,) and I think within its spirit and mean-
ing. In *Clute* v. *Bool,* (8 *Paige,* 83,) the chancellor held that
under the 55th section of the revised statutes, (1 *R. S.* 728,) a
valid trust could be created, to receive the rents and profits or
income of property, and to apply the same to the use of the
cestui que trust by paying the same over to him in money, af-
ter such rents and profits or income had accrued and been
received by the trustee. And Ch. J. Nelson expressed the
same opinion in *Hawley* v. *James,* (16 *Wend.* 118, 119.) Bron-
son, J. in 16 *Wend.* 156, 157, and Savage, Ch. J. in 14 *Wend.*
265, intimated a different opinion.

Chief Justice Nelson and Justice Bronson, in 16 *Wend.* 118,
165, held that an annuity payable out of the rents and profits
or income of trust property was an interest inalienable, under
the 63d section of the article relative to uses and trusts. And
Chancellor Walworth concurred in this opinion, in *Clute* v.
*Bool,* (8 *Paige,* 86.)

The remaining questions in this case arise under the will of
Findlay McMartin, the husband of the defendant. It is con-
tended by the counsel of the defendant that the devise to the
trustees in trust to permit the defendant, so long as she should
live, or during the minority of her youngest child, for her bene-
fit and the maintenance of the children, to enjoy the rents and
profits of the lands devised, and that after the defendant's death,
or the arrival of the youngest child at the age of 21, the lands
should be sold, or divided equally between the defendant and
the testator's then surviving children, is void, being an illegal
suspension of the power of alienation. The will in question
took effect before the adoption of the revised statutes. Its valid-
ity, therefore, is not to be determined by such statutes. By the
common law the absolute ownership of real property could be
suspended during the continuance of a life or any number of
lives in being at the creation of the estate, and of 21 years af-
ter, and nine months in addition, for the birth of a posthumous
child. (4 *Kent's Com.* 267, 17. 2 *Cowen,* 333. *Fearne on*

---

Stewart *v.* McMartin.

---

*Cont. Rem.* 445 *and note.*) The devise in question, therefore, is not void on account of any illegal suspension of the power of alienation. It would probably have been valid under the revised statutes, as it was only a devise in trust to permit the defendant to receive the rents and profits of the lands devised, during her life, or for a shorter period, if the youngest child arrived at the age of 21 before the death of the defendant. (2 *Barb. Ch. Rep.* 506.) But the title of the trustees, being merely nominal, and not connected with any power of actual disposition, or management, the legal estate in the lands devised, by virtue of the 47th section of the article in relation to uses and trusts, passed to the defendant for the period prescribed for the continuance of the trust, viz. during the life of the defendant, or the minority of her youngest child. This legal estate was subject to the same condition as her beneficial interest in the lands devised, viz. the maintenance of her children. The defendant's youngest child having arrived at the age of 21, her legal estate in the whole premises has terminated. And the premises, under the will, now belong to the defendant and her 11 children equally, as tenants in common, either for life or in fee, subject to a power in trust given to the trustees by the testator to sell the same; and subject also to a right of dower of the defendant in eleven-twelfths of that part of the premises of which the testator died seised in fee. The testator did not declare, in express terms, that the devise to the defendant should be in lieu of dower; nor is any such intention of the testator deducible by clear and manifest implication from the provisions of the will. The defendant is not therefore compelled to elect between her dower and the devise in her favor, but is entitled to both. (*See Adsit* v. *Adsit,* 2 *John. Ch. Rep.* 450 ; *Church* v. *Bull,* 2 *Denio,* 430 ; *Sampson* v. *Jackson,* 10 *Paige,* 206; *Wood* v. *Wood,* 5 *Id.* 596.) The case of *Tompkins.* v. *Fonda,* (4 *Id.* 448,) decides that a right of dower, before assignment, is a chose in action, within the meaning of section 39 of the title of the revised statutes relative to the court of chancery, (2 *R. S.* 174,) and may be reached by a creditor's bill.

The conclusions at which I have arrived are, that the annuity payable to the defendant under the trust deed of her father cannot be reached by the plaintiff's bill; but that her estate in remainder in one-twelfth of the premises devised by the will of her husband, and her claim of dower in the remaining eleven-twelfths of the real estate of which her husband died seised in fee, must be applied in satisfaction of the plaintiff's judgment.

It is doubtful whether the words of the will, directing that the lands, on the arrival of the youngest child at the age of 21 years should be sold, or divided equally between the defendant and the testator's then surviving children, gave to them an estate in fee or for life only. (*Bool* v. *Mix*, 17 *Wend.* 119. 13 *Id.* 578. *Jackson* v. *Buel*, 10 *John.* 148. *Smith* v. *Berry*, 8 *Ham. Ohio Rep.* 365.) Neither is it clear that the devise in the will, by the testator, of all his lands, hereditaments and messuages, passed to the devisees the interest of the testator in his leasehold lands. (1 *Wash.* 800. *Executors of Aylett* v. *Aylett*, 1 *Hil. Ab.* 1, 2, 3. 2 *Id.* 347, 528. *Johnson* v. *Stagg*, 2 *John.* 522.) These questions were not discussed by the counsel for the parties; and I shall not dispose of them on this occasion. If the leasehold lands of the testator did not pass under his will, they went to his executors to be applied and distributed as personal estate; and the surplus, after payment of his debts, the executors are bound to distribute among the next of kin of the testator; to one third part of which the defendant is entitled, as the widow of the testator. If these leasehold lands passed under the will, the defendant acquired, as devisee, an estate in the whole of such lands during the minority of her youngest child, with a remainder for the unexpired term in one equal twelfth part thereof, to take effect on the arrival of such youngest child at the age of 21. In the lands of which the testator died seised in fee, the defendant acquired, under the will, a beneficial interest in the whole rents and profits thereof during life or the minority of her youngest child, with a vested estate in remainder either for life or in fee in one equal twelfth part of such lands; to take effect on the expiration

Stewart *v.* McMartin.

of the minority of such youngest child, subject to be increased by the death of any of the children previous to that time. As all the children survived the expiration of the minority of the youngest child, her interest in the lands devised is now a vested estate for life or in fee in one equal undivided twelfth, and a right of dower in the remaining eleven-twelfths. The 11 children took, under the will, a vested estate in remainder, either for life or in fee, in eleven-twelfths of the lands of which the testator died seised in fee, subject to be divested as to any one of them who might die before the expiration of the minority of the youngest child.

A decree must be entered directing a reference to a referee in the county of Montgomery to appoint a receiver, and directing that after the appointment of a receiver, the defendant assign to him, for the purposes of this suit, her right of dower in the lands of which her husband died seised in fee ; and authorizing the receiver to proceed in her name for the recovery and assignment of her dower ; and directing that after such dower has been assigned the receiver be let into the possession of the lands assigned to the defendant for her dower, and receive the rents and profits thereof until the further order of this court. Such decree must also direct that the defendant assign to the receiver, generally, all her property, real and personal, with the exception of the annuity payable to her under her father's trust deed, and of such property as is exempt by law from sale on execution. The decree must also contain the usual provisions inserted in final decrees on creditors' bills.