## ACKERMAN *a.* ACKERMAN.

*New York Common Pleas; General Term, March,* 1862.

ATTORNEY'S LIEN FOR COSTS.—EFFECT OF SATISFACTION-PIECE.—REGULARITY OF EXECUTION.—TRIAL BY JURY.

An execution cannot be issued upon a judgment which has been satisfied by the filing of a certificate, as prescribed by 2 *Rev. Stat.*, 362. If the satisfaction is voidable for any cause, it must be vacated by the court before execution can be issued.

The lien of the attorney is an equitable right to be paid for his services out of the proceeds of the judgment or other proceeding obtained by his labor and skill, which the court will compel to the extent of its equitable power. Under the Code, the lien is not limited to the taxable costs; but the attorney, unless the proceeds have come into his hands, must invoke the equitable aid of the court to ascertain the existence and amount of the lien before any steps can be taken to enforce it.[*]

Payment by a judgment-debtor to a judgment-creditor, of the amount of the judgment, is valid against the lien of the attorney, unless the debtor has notice of the attorney's claim by way of lien to a portion of such judgment.

The lien of the attorney attaches not merely to the costs in the judgment but to the whole judgment—damages and costs.

---

[*] Compare 11 *Ante,* 256.

On application to the court to protect the lien of the attorney, the existence and
extent of such lien may be determined in a summary way—as by a reference.
The client cannot claim a right to trial by jury.

Appeal from an order denying a motion to set aside an exe-
cution, except on payment of the attorney's lien.

This action was brought by Peter J. Ackerman against John
P. Ackerman, upon two bonds amounting to $4,200. Judgment
was recovered in favor of the plaintiff, on failure to answer, on
October 13, 1860, for $4,565.89, damages, and $17.73, costs.
On October 15, 1860, the plaintiff's attorney, Aaron P. White-
head, Esq., caused notice to be served on the defendant to the
effect that he had a lien upon the judgment for the costs and
disbursements, and also for the additional sum of one hundred
dollars as a counsel-fee, and forbidding defendant to settle with
the plaintiff without paying off this lien. On October 17, 1860,
the parties to the action assumed to settle the same ; and plain-
tiff executed and acknowledged satisfaction, and the judgment
was marked satisfied of record. The defendant, before taking
the satisfaction, paid to the plaintiff's attorney $43.66, by way
of costs and disbursements of the suit. On October 20, 1860,
the plaintiff's attorney issued an execution upon the judgment,
reciting that $72.27 was due upon it, and directing the collec-
tion of that sum.

The defendant moved at chambers, before Hon. Judge Brady,
to set aside the execution. The motion was opposed by the
plaintiff's attorney, with an affidavit detailing the labor and
difficulty in the prosecution of the suit, and in obtaining judg-
ment, and setting forth that prior to the settlement of the suit
his account for $121.87 was submitted to the defendant, and
that the latter agreed to pay the same on settling the suit, and
that on another occasion defendant called and apologized for
not paying as agreed, on account of having forgotten one of his
savings-bank books.

The motion was denied unless defendant should pay $72.27,
the balance due under the attorney's lien. The defendant ap-
pealed.

*Townsend & Kane,* for the appellant.—I. The settlement be-
tween the plaintiff and defendant was not in fraud of any of the

rights of the plaintiff's attorney. 1. He received the costs taxed in the judgment. 2. The plaintiff's attorney was to be paid by the defendant his fee, and not by the plaintiff or out of the damages. The plaintiff only received what he was entitled to,— the defendant, if he was liable to plaintiff's attorney, remains so. The plaintiff's attorney may have an action against the defendant, but he is not entitled to the summary mode he has adopted to recover his fee.

II. The issuing of the execution after the judgment had been satisfied of record, even though the plaintiff's attorney had a lien, was improper, and the execution should have been set aside on this ground. It has been the universal practice to vacate the satisfaction of judgment before issuing execution, in cases of this kind. (Rooney *a.* Second Ave. R. R. Co., 18 *N. Y.*, 368; Ward *a.* Wordsworth, 1 *E. D. Smith*, 598.) The defendant was not given the opportunity of refuting the statements in the affidavit of plaintiff's attorney. If the regular course had been pursued by plaintiff's attorney, the merits of his claim could be investigated.

*Aaron P. Whitehead,* for the respondent.—I. This is a case where plaintiff and defendant combined after judgment to defraud plaintiff's attorney of his counsel-fee, defendant having full notice of the lien, and being warned not to settle without paying it. Defendant settles at his peril after notice. (Ward *a.* Wordsworth, 1 *E. D. Smith*, 598; Hall *a.* Ayer, 9 *Abbotts' Pr.*, 220; Rooney *a.* Second Ave. R. R. Co., 18 *N. Y.*, 368.)

II. The satisfaction-piece was filed in fraud of plaintiff's attorney, and was therefore, as to him, absolutely void. All fraudulent acts are void. Plaintiff's attorney was ignorant of the filing of it, and issued the execution of it innocently. If the execution should be set aside, the sheriff's fees would be thrown on plaintiff's attorney, and the defendant would thus take advantage of his own wrong.

BY THE COURT.*—DALY, F. J.—The execution was erroneous for two reasons. In the first place, there was no judgment upon which it could issue, the judgment having been satisfied in the

---

* Present, DALY, F. J., HILTON and BRADY, JJ.

mode pointed out by law (2 *Rev. Stat.*, 362; same stat., 5 ed., vol. 3, 640); and in the second place, the fact that the attorney had a lien, and the amount of it had never been ascertained so as to entitle it to be enforced by execution.

The attorney's remedy in the first instance was to move the court to vacate the satisfaction of the judgment; and that being done, he would then have been in a position to apply to the court to enforce his lien, if he had one. (Groves *a.* Earles, 5 *Taunt.*, 429; Griffen *a.* Eyles, 1 *H. Bl.*, 122; Walsh *a.* Hale, 1 *Doug.*, 238; Reed *a.* Dupper, 6 *T. R.*, 361; Charlwood *a.* Berridge, 1 *Esp.*, 345; Ward *a.* Wordsworth, 1 *E. D. Smith*, 598; Rooney *a.* Second Ave. R. R. Co., 18 *N. Y.*, 368.) But he seems to have acted under the impression that he alone had the right to determine the fact of the existence of a lien as well as the amount of it; that his client had no right to be heard; and that he was at liberty to issue execution against the defendant for such sum as he considered himself entitled to for counsel-fees, although the judgment was satisfied by the agreement of the parties, and was discharged of record. This was altogether erroneous.

The lien of the attorney is merely an equitable right to be paid for his services out of the proceeds of the judgment or other proceeding which has been obtained by his labor and skill; which the court will compel to the extent of its equitable power. It is distinguishable in this respect from the ordinary lien which a party has upon a thing in possession, which he is enabled himself to protect by refusing to deliver the property until his claim is satisfied. The attorney, unless the proceeds have come into his hands, must invoke the equitable aid of the court; and, as in every case of the exercise of its equitable powers, the court must be satisfied of the existence of the equitable right before any steps can be taken to enforce it. Formerly, in this State, when the attorney's compensation was fixed absolutely by statute, no inquiry was necessary to ascertain the amount of his lien. The attorney could recover from his client no other or greater sum for his services than the client could recover for the same services from the defeated party. (2 *Rev. Stat.*, 650, § 5.) The measure of compensation in the one case was equally the measure of compensation in the other; and when the costs, therefore, were taxed and incorporated in the

judgment, the judgment showed upon the face of it the exact extent of the attorney's lien. But now, by the Code, all provisions restricting or controlling a party from agreeing with an attorney for his compensation are abolished, and the "measure of such compensation" is now left, in the language of the Code, to the agreement, express or implied, of the parties. It is impossible for the court now to know what the attorney is entitled to, unless evidence is produced of the agreement of the parties, or from which an agreement may be implied, together with proof of the actual value of the services rendered; and I suppose that the proper course is to move the court, as was done in Read *a.* Dupper (6 *T. R.*, 361), for an order of reference to ascertain the amount of the attorney's lien. If there has been an express agreement, and the fact of the services rendered is not denied upon the motion, a reference, of course, would be unnecessary; but until, by some such mode, the fact and the amount of the attorney's lien is ascertained, he is not in a position to obtain the equitable aid of the court.

It has been decided by the Supreme Court of the Third Judicial District in Haight *a.* Halcomb (7 *Abbotts' Pr.*, 210), that under the Code the attorney's lien is limited to the amount allowed to the prevailing party as costs; and if that decision is correct, the attorney in this case had no lien, as he had already received the amount allowed to the prevailing party in the judgment—the lien which he claimed to have, being for the balance of a counsel-fee. I do not, however, give my assent to the correctness of that decision. The grounds upon which it is founded, as gathered from the opinion of Justice Gould, appear briefly to be these: that the attorney's lien before the Code was limited to the costs in the judgment; that the allowance now given to the prevailing party is a substitute for and in strict analogy to the costs under the old fee bill; that there is, upon the judgment-roll itself, a claim of which all parties have notice, and in any settlement with the party the defendant settles these costs at his peril; that the agreement between the attorney and client is indefinite, or known only to themselves, and that it does not appear upon the face of the record; that there is no short method to which an attorney is entitled, by which to settle what is in dispute between him and his client, and that no party can ever be safe in settling a judgment against the claim of an attorney,

but must abide the due course of an execution which will necessarily be collected before the attorney and his client can have their differences decided.

To all this it may be answered: I. That if the attorney's lien was formerly limited to the amount of the costs in the judgment, the reasons given for so holding (Scott *a.* Elmendorf, 12 *Johns.*, 315) was because that was all that he could recover for his services, a reason which no longer exists.

II. The entry of costs in the judgment-roll does not operate as a notice to the party liable upon the judgment that the attorney has a lien. These costs belong to the party, and not to the attorney (Ward *a.* Wordsworth, 1 *E. D. Smith*, 598), and the attorney may have received his costs from his client, though the client has not obtained the costs to which he is entitled by his judgment. The inference, therefore, that there is a claim on the part of the attorney apparent upon the face of the judgment to the amount of the costs there included, and that the defendant settles these costs at his peril, is without foundation. The party liable incurs no peril at all in paying the judgment, together with the costs included in it, to the prevailing party, or in settling or discharging the judgment in any way that the parties agree upon, unless he has actual notice of the fact of the attorney's lien and of the amount of it. If, however, after he has knowledge of the lien, he pays or settles the whole judgment with the prevailing party, he does so in his own wrong, and the court will allow the judgment to be enforced against him to the extent of the attorney's claim. (Martin *a.* Hawks, 15 *Johns.*, 405; Swain *a.* Senate, 5 *Bos. & P.*, 99.) If, says Lord Kenyon, in Read *a.* Dupper, *supra*, the money has been paid over *bona-fide* to the plaintiff without notice from the attorney of his lien, such a payment would be good; but if in violation of the notice, it cannot be suffered; and he likens it to the case of an assignment of a chose in action where payment is made to the principal after notice of the assignment, which is considered as being made in fraud of the rights of the assignee, and is not therefore available to the party making it.

III. The attorney's lien does not, as would seem to be the impression of Justice Gould, attach merely to the costs in the judgment, but attaches to the whole judgment, damages as well as costs. (Randle *a.* Fuller, 6 *T. R.*) It is an equitable right,

to be paid out of the proceeds of that which was obtained by his labor and skill, and the court will interpose to the extent of his claim, to prevent the client from receiving the whole proceeds, without discharging the obligation which he owes to the attorney; and if the other party, after notice, enables the client to do so, by settling the whole claim with him, he does so at his peril. If, after being notified of the attorney's lien, an execution is issued against him, he can discharge himself from all further obligation in the matter by paying the amount of the judgment and costs to the sheriff. The money is then brought into court (Cannon *a.* Smallwood, 3 *Lev.*, 203), and if the fact or the amount of the attorney's claim is in dispute, the client or the attorney may apply to the court, and the sheriff will pay over the proceeds in accordance with such order as the court may make in the premises.

IV. I have already pointed out the short method by which the fact and the amount of the attorney's lien may be ascertained. In Haight *a.* Holcomb a reference was ordered, but the plaintiff refused to appear upon it, claiming that he had a right to a trial by jury upon the question in difference between himself and his attorney, and that the court could not compel him to have it settled by a reference, and Justice Gould says that he is unable to see why the position taken by the plaintiff was not a sound one. The simple answer to the objection is, that the power which a court exercises in the matter of an attorney's lien is an equitable one, in which the aid of a jury is not necessary, and cannot be demanded as a matter of right. In Wilkins *a.* Carmichael (1 *Doug.*, 100), which is the first reported recognition of it in the common-law courts, Lord Mansfield refers to it as a practice established upon general principles of justice, by which an attorney may obtain an order to stop his client from receiving money recovered in a suit in which the attorney was employed, until his bill is paid. It was introduced into the common-law courts from the Court of Chancery (Turwin *a.* Gibson, 3 *Atk.*, 720), and like the practice of setting off judgments, and other equitable powers incident to courts of common law, it has always been a matter of equitable cognizance. The mistake lies in confounding a right of trial by jury,—which would exist if the attorney had brought an action against his client, and sought to obtain a judgment,—with a pro·

ceeding for an equitable application of fund under the control of the courts.

In lieu of what was given to the prevailing party, under the old fee bill, for the services rendered by an attorney in the prosecution of the cause, certain sums are now given which are not graduated as formerly according to each particular act of service, but are allowed in gross sums at certain stages in the proceeding. These amounts are positively fixed, but there is nothing limiting the attorney's compensation to the amount of these allowances. The repeal of the former restrictions, the omission to enact any thing analogous in its place, and the explicit declaration that the measure of compensation is hereafter to be left .o the agreement, express or implied, of the parties, show very plainly that no limit was intended. The client may agree with his attorney for more or for less, or upon an implied agreement the actual value of the attorney's services may be much greater than the amount allowed by statute to his client. However the fact may be, whether his compensation is fixed by the express agreement of the parties, or is ascertained by proof of the actual value of his services, he has upon equitable grounds a right to have his just claim satisfied out of the money obtained through his instrumentality. As respects the party who is to pay the money, he is not affected unless he pays it wrongfully after notice of the attorney's claim; and as respects the client, it is just that the attorney should be paid before he gets the proceeds. In England the lien attaches though the attorney's claim is unascertained (Read *a.* Dupper, *supra*), just as the lien of the tailor attaches to the garment he has made, though the parties may not have agreed as to the price of his labor. The limit of the lien is the amount to which the attorney is entitled, and the mode by which it is ascertained has nothing to do with the nature or existence of the right. The right has been established by a long series of decisions, and as there is nothing in the Code limiting the attorney's compensation to the amount allowed to the prevailing party, there is no ground for holding that his lien is confined within that limit.

The order appealed from should be reversed.