NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—May, 1887.

## MATTER OF HOYT.

*In the matter of the estate of* JESSE HOYT, *deceased.*

A Surrogate's court has no power to order a substitution of one attorney
for another, in respect of a party to a special proceeding, instituted
therein, after the same has been removed by appeal to another court.

Where the daughter and sole next of kin of a decedent, her father, while
engaged in contesting his will, which constituted her a *cestui que trust*
with an interest less than would belong to her in case the will were re-
fused probate, made application to the court for an allowance, *pendente
lite*, out of the income of the estate for her support ; which was op-
posed by her attorney, insisting upon the protection of his lien for ser-
vices rendered in the cause,—

*Held,* that such lien, if any existed, could attach only to the excess of con-
testant's interest in case intestacy were decreed, over that passing to
her under the will if sustained, and so furnished no reason for refusing
to grant the application to an extent not exceeding the amount of the
latter interest.

Under 1 R. S., 730, § 63, enacting that " no person beneficially interested in
a trust for the receipt of the rents and profits of lands can assign or in
any manner dispose of such interest," extended by the decisions to a
trust of personalty,—an attorney for a beneficiary of such a trust,
created by will, employed to contest the probate thereof, cannot, by
virtue of his retainer, secure, pending the contest, a lien upon income,
the disposition of which, for the contestant's benefit, the Surrogate has
power to direct.

As to whether an attorney for a party to a special proceeding in a Surro-
gate's court is entitled to the benefits of the provision of Code Civ. Pro.,
§ 66, declaring that, " from the commencement of an action, or the ser-
vice of an answer containing a counterclaim, the attorney who appears
for a party has a lien upon his client's cause of action or counterclaim,"
etc.,—*quære.*

DETERMINATION of contest as to attorney's lien for
services, upon share of next of kin of decedent and

beneficiary under his will; and of an application by the latter for an allowance out of the estate.

ROBERT SEWELL, *for the application.*

F. J. DUPIGNAC, *opposed.*

THE SURROGATE.—On October 3rd, 1882, Mary Irene Hoyt, the daughter of this decedent and his only next of kin, commenced in this court a proceeding for the revocation of the probate of an instrument that had been theretofore adjudged and decreed to be her father's last will and testament.

Aaron Kahn, Esq., appeared as her attorney in such proceeding, and continued to act in that capacity with her approval and by her direction until March 20th, 1885, when she advised him that she would no longer require his services. Shortly thereafter, and while this probate controversy was still pending and undetermined, Miss Hoyt applied to the Surrogate, by F. J. Dupignac, Esq., as her attorney, for an order directing the executors of this estate to pay her the sum of eighty thousand dollars, to be charged against her as beneficiary under her father's alleged will, or as his next of kin, accordingly as the probate of such alleged will should be upheld or overturned.

Mr. Kahn claimed the right to appear in opposition to this application, upon the ground that, as the contestant's attorney of record, he had a lien upon her interest in the estate, and he protested that no moneys should be paid to her thereout, pursuant to the motion of any attorney other than himself, until

such attorney had been regularly substituted in his stead, either upon his (Mr. Kahn's) consent, or upon payment to him of such sum as, after proper inquiry, might be found to be his due.

The questions involved in this claim have never been determined by the Surrogate. A course was agreed upon and adopted by counsel for the contestant and for Mr. Kahn respectively, which made it unnecessary to decide whether the latter's claim of lien was or was not well founded, or to what, if well founded, it attached, or whether the fact that Mr. Kahn was still the attorney of record for the contestant in the revocation proceeding did or did not preclude her from presenting, through another attorney, an application for an allowance out of this estate. An order of reference was entered, by consent of counsel, under the following circumstances: In the course of a discussion in open court as to the possible delay that might be occasioned in the trial of the probate controversy by Mr. Kahn's opposition to the motion for the $80,000, Mr. Fullerton, who was then acting as one of the contestant's counsel, stated that if Mr. Kahn would waive service of papers he would then and there move for an order substituting Mr. Dupignac in his (Mr. Kahn's) place as contestant's attorney, upon such terms as might be found just and reasonable after an investigation before a referee. To this proposition Mr. Kahn, through his counsel, acceded.

It was then suggested that as Mr. Kahn might, by an out and out substitution pending a reference, lose the benefit of whatever lien he might have obtained

upon his client's cause of action and upon any decree that might be made in her favor in the probate proceeding, his rights should be protected by continuing him as one of her attorneys; this with the understanding that Mr. Dupignac's attorneyship should also be recognized, and that Mr. Kahn should not thereafter interfere in the direction or control of the cause. An order was thereupon entered whereby the referee therein designated was directed to take evidence as to " the value of the services rendered by the said Kahn for the said Mary Irene Hoyt, and the moneys he has received from her during the period of such services, and the sums he has properly disbursed on her account, and to report the said evidence to this court, together with his opinion thereon, with all convenient speed." The order contained also the provision following: " That in the meantime and until the further decision of this court upon the coming in of the referee's report, Miss Mary Irene Hoyt may appoint another and additional attorney to the said Aaron Kahn, without prejudice, however, to any lien that the said Kahn now has upon all the papers in his possession and the funds in court for his fees (for services) heretofore rendered in the matter."

The foregoing order of reference was entered on April 18th, 1885. On November 1st, 1886, the referee filed his report. A few days later, the Surrogate, on Mr. Kahn's application, granted an order for Miss Hoyt and the executors of this estate to show cause why such report should not be confirmed, and why an order should not be entered directing, among other things, the payment to Mr.

Kahn of $15,745.68 (being the amount found by the referee to be still due to him as contestant's attorney) out of any moneys then in the hands of the executors due or owing to the contestant under her father's will, and in case no moneys should be due or owing to her, then out of the first moneys that should come to the hands of the executors applicable to payment of the testamentary provision for her benefit.

The motion for the confirmation of the referee's report was made before the Surrogate on November 29th, 1886. Prior to that date there had occurred the events following:

On August 28th, 1886, the Surrogate had rendered a decision adverse to the contestant's petition for revocation. On October 6th, a decree had been entered confirming the probate of the will. On October 11th, the petitioner had filed notice of appeal to the Supreme court. On November 15th, that appeal had been perfected by a deposit in this court of $250 in lieu of an undertaking.

Upon the facts above stated I proceed to consider—

1st. Whether the moving party herein has a lien as attorney upon any interest of the contestant in this estate, and, if such lien exists, then to what it attaches or relates; and

2d. Whether the Surrogate now has authority to direct that the sum found by the referee to be due from the contestant to Mr. Kahn, or any sum whatever, be paid to him by the contestant herself or by the executors and trustees of this estate.

*First.* Prior to the enactment of the first part of the Code of Civil Procedure, an attorney in an action

could not claim a lien for his services until he had obtained a verdict, or perhaps, it is safe to say, until the actual entry of a judgment in his client's favor.

The recognized basis of that lien was the right of the attorney to resort to the fruits of a judgment in compensation for his services in obtaining it. In Baker v. St. Quentin (12 *M. & W.*, 441–451), Baron PARKE described the charging lien of an attorney as " merely a claim to the equitable interference of the court to have the judgment held as security for his debt." Lord COCKBURN pronounced it in Mercer v. Graves (*Law Rep.*, 7 *Q. B.*, 499, 503), as " a claim or right to ask for the intervention of the court for his (the attorney's) protection, when, having obtained judgment for his client, he finds there is a probability of the client depriving him of his costs."

The lien of an attorney upon a judgment recovered in the courts of this State was formerly limited to his taxable costs, but by the Code of 1848 an attorney's compensation was made to depend upon the contract, express or implied, between himself and his client, and his charging lien has since been held to cover his entire compensation for services in the action ; which compensation, in the absence of a definite agreement as to its amount, has been measured by the reasonable value of such services. It is only, however, since section 66 of the Code of Civil Procedure was amended by chapter 542 of the Laws of 1879, that the lien of an attorney in a judicial proceeding has extended to the " cause of action," and has attached itself to such cause of action from the commencement of such proceeding. Theretofore the fact that an attorney had

commenced a suit upon a retainer to prosecute it gave him no lien upon what might 'be recovered in the event of its successful prosecution (Rooney v. Second Ave. R. R. Co., 18 *N. Y.*, 368; Shank v. Shoemaker, 18 *N. Y.*, 489; Pulver v. Harris, 52 *N. Y.*, 73; Wright v. Wright, 70 *N. Y.*, 96; Coughlin v. *N. Y. C.* etc., Co., 71 *N. Y.*, 443).

The cases just cited hold that, until the entry of judgment, a party might formerly have effected a settlement or compromise with the opposing party without consulting his attorney, and that such settlement or compromise the attorney would ordinarily have been powerless to prevent.

This doctrine was subject to the limitation that any settlement so effected by the parties to an action, in fraud of an attorney conducting it, and with an intention of depriving him of his compensation, would be set aside, so as to allow him to proceed for the collection of his costs (Coughlin v. N. Y. C., etc., Co., *supra;* Talcott v. Bronson, 4 *Paige,* 501; Ackerman v. Ackerman, 14 *Abb. Pr.,* 229; Tullis v. Bushnell, 65 *How. Pr.,* 456).

The character and extent of an attorney's lien are now defined by § 66 of the Code, as follows:

"From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and upon the proceeds thereof, in whosesoever hands they may come, and cannot be affected by any

settlement between the parties before or after judgment."

Surrogate COFFIN lately held in Smith v. Central Trust Co. (4 *Dem.*, 75), that attorneys conducting special proceedings in Surrogates' courts, are not entitled to the benefits of this section. In an earlier case (Eisner v. Avery, 2 *Dem.*, 466), I intimated a contrary opinion, to which I shall, though somewhat hesitatingly, adhere for the purposes of this motion.

Now, what is the " cause of action " to which the lien of the moving party herein must be deemed to relate ? Dr. Pomeroy, in his work on "Remedies and Remedial Rights" (§ 454), thus defines that expression : "Every action is brought in order to obtain some particular result which we term the remedy, and which, when granted, is summed up or embodied in the judgment of the court. . . . . . Every remedial right arises out of an antecedent primary right and corresponding duty, and a delict or breach of such primary right and duty by the person on whom the duty rests. Every judicial action must therefore involve the following elements : A primary right possessed by the plaintiff and a corresponding duty devolving upon the defendant; a delict or wrong done by the defendant, which consists in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict. Every action must contain these essential elements. Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term. . . . .The cause of action will there-

fore always be the facts from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act of wrong."

Now, applying this definition, which is stamped with the approval of the Court of Appeals in Veeder v. Baker (83 *N. Y.*, 153, 160), to the case at bar, what is here the "cause of action"? If the contestant's claim is well founded, her primary right, growing out of her father's intestacy, is to receive the share of his estate to which, under the Statute of Distributions, she is entitled as his only next of kin. The correlative duty of the persons holding that estate in the pretended capacity of executors and trustees under a pretended will, is to surrender to the contestant such portion thereof as is her due. The wrong which they are perpetrating consists in their undertaking to deprive her of the excess of the benefits that must accrue to her if the will is invalid and ineffectual, above the benefits which they admit belong to her if that instrument is sustained. The obtaining of that excess is the remedial right which she is here seeking to secure.

If the decision and decree of the Surrogate shall ultimately be sustained on appeal, it will be discovered that the contestant has never had any just " cause of action " at all, and that she has therefore never had any interest in this estate to which the lien of her attorney can at any time have attached. If Mr. Kahn's lien is limited, therefore, to the surplus of what is his client's due in case her father is discovered to have died intestate, above the sum to which she may justly lay claim in case the probate of his alleged will

shall be justified, it follows that, in passing upon her applications for advances, her indebtedness to Mr. Kahn is not to be taken into consideration; for the Surrogate has never hitherto directed, and, pending the appeal from his decree of October 6th, 1886, can never hereafter direct, the payment of any advance to the contestant in excess of the sum to which she would be entitled as *cestui que trust* under the will. See my memoranda of January 13th, 1883, July 23d, 1883, and July 15th, 1886, of which the first named is reported *sub nom.* Hoyt v. Jackson (1 *Dem.*, 553).

The lien of the moving party upon his client's cause of action has been in nowise impaired, therefore, by the payment to her of moneys to which the lien could in no contingency attach, and that lien can be in nowise impaired by like payments hereafter.

Unless he shall receive such balance of compensation as may be owing to him, Mr. Kahn's lien upon such cause of action must continue in force until it shall be perfected by a judgment in his client's favor, in the court to which resort shall finally be had, or until, in that tribunal, a judgment shall be recovered against her, by which it shall be finally determined that she has never had any just cause of action, and that there is, therefore, no foundation for any lien.

*Second.* There is another consideration which also impels me to the conclusion that the moving party herein has no lien as attorney upon the interest of his client as beneficiary of the trust created by the will for her benefit.

Section 63, tit. 2, ch. 1, part 2, of the Revised Statutes (3 Banks 7th ed., 2182), provides that " no per-

son beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of such interest." This constraint has been declared by numerous decisions to be applicable to persons beneficially interested in trusts for the payment of income of personal property, as well as to persons so interested in the rents and profits of realty (Hallet v. Thompson, 5 *Paige*, 583; Clute v. Bool, 8 *Paige*, 83; Bramhall v. Ferris, 14 *N. Y.*, 41; Graff v. Bonnett, 31 *N. Y.*, 9; Campbell v. Foster, 35 *N. Y.*, 361; Genet v. Foster, 18 *How. Pr.*, 50; Manning v. Evans, 19 *Hun*, 500, 502; Cutting v. Cutting, 85 *N. Y.*, 522, 546; Lent v. Howard, 89 *N. Y.*, 169, 181; Cook v. Lowry, 95 *N. Y.*, 103, 111; Tolles v. Wood, 99 *N. Y.*, 616).

The beneficiary of a trust for the receipt of income is unable therefore to assign, dispose of, or in any manner mortgage or pledge his interest in such income, or to contract any debt which can create a lien upon it. A person to whom he is indebted may, in a court of general equity jurisdiction, and not elsewhere, and in a proceeding where an issue is directly made as to the amount necessary for the debtor's support, and not otherwise, reach any trust income belonging to the debtor, in excess of the sums necessary for the education, support and maintenance of himself and family, and can reach naught besides (1836, Hallet v. Thompson, *supra;* 1840, Clute v. Bool, *supra;* 1845, L'Amoureaux v. Van Rensselaer, 1 *Barb. Ch.*, 34; 1846, Rider v. Mason, 4 *Sandf. Ch.*, 351; 1847, Silleck v. Mason, 2 *Barb. Ch.*, 79; 1849, Stewart v. McMartin, 5 *Barb.*, 438; 1856, Bramhall

v. Ferris, *supra;* 1857, Scott v. Nevius, 6 *Duer*, 672;
1859, Genet v. Foster, *supra;* 1865, Genet v. Beek-
man, 45 *Barb.*, 382; 1865, Graff v. Bonnett, *supra;*
1866, Moulton v. De Macarty, 6 *Robt.*, 533; 1866,
Locke v. Mabbett, 2 *Keyes*, 457; 1866, Campbell v.
Foster, *supra;* 1877, Williams v. Thorn, 70 *N. Y.*,
280; 1880, Manning v. Evans, *supra;* 1885, Tolles
v. Wood, *supra*).

The Court of Appeals, in the case last cited, says:
" The disposition of such an income" (*i. e.*, of income
directed by a testator to be applied by his trustees to
the use of a beneficiary) " cannot be anticipated by
the *cestui que trust* or encumbered by any contract
entered into by him providing for its pledge, transfer
or alienation previous to its accumulation." And
the court says further, that " the creditor of such a
beneficiary acquires a lien upon the accrued or unex-
pended surplus income, or that subsequently arising
from such fund, superior to the claims of general
creditors or assignees of the *cestui que trust*, by the
commencement of an action in equity to reach and
appropriate it to the satisfaction of his judgment."

Now the testator in the case at bar has directed his
trustees to collect the income of the trust in behalf of
his daughter, and to apply the same " as the same
may be required for her use and benefit, for and during
her natural life, in the most bounteous and liberal
manner as to expenditure, and so as to promote her
convenience and comfort." Whether the beneficiary
can claim under this provision the entire income of
the trust, or whether the trustees can withhold such
portion as may not in their discretion be found requi-

site for her "convenience and comfort" and her "bounteous and liberal support," and what disposition must be made of any surplus income that the trust fund may yield in excess of the sums that may from time to time be applied to her use by the trustees, cannot be here and now determined. It may perhaps be doubtful whether under this testator's will a creditor of his daughter can ever lay hold of any surplus income of the trust for her benefit, and it is clear that while the validity and integrity of that will are still in dispute, the sums whose disposition for the contestant's benefit the Surrogate can direct, are precisely those sums which she "cannot encumber by any contract providing for its pledge, transfer or alienation," and upon which therefore no attorney can upon her retainer have secured a lien (Noyes v. Blakeman, 3 *Sandf.*, 531, 541; affi'd, 6 *N. Y.*, 567, 579, 583; Embree v. Franklin, 23 *Hun*, 203; Twopenny v. Peyton, 10 *Sim.*, 487; Holmes v. Penney, 3 *K. & J.*, 90; Hall v. Williams, 120 *Mass.*, 344).

An order may be entered directing the executors and trustees of this estate to pay the contestant the sum of $12,000.

*Third.* There remains to be considered the question whether, apart from any supposed authority to direct the application of funds of this estate to the satisfaction of an attorney's lien, the Surrogate can now declare the amount of the moving party's claim against the contestant and give direction for its satisfaction.

It is manifest that the Surrogate has no jurisdiction in the premises, except such as springs from his

authority to prescribe the terms upon which he will direct the substitution of an attorney for the contestant in place of the attorney who instituted her proceedings for revocation of probate. Counsel for Mr. Kahn asks that Mr. Dupignac be displaced as " additional attorney," unless the moneys found by the referee to be due his client shall be paid, and asks that, in the event of its payment, Mr. Dupignac be substituted for his client and the latter discharged from the contestant's service.

No such direction can now be given, for the reason that the proceeding out of which this controversy has sprung is no longer pending. Whatever power the Surrogate may formerly have had to direct the conditions upon which a substitution of attorneys should be effected, no such power exists to-day.

It has been already stated that, before the submission of the motion to confirm the report of the referee, the probate controversy had been removed out of this court into the Supreme court by appeal.

An order substituting one attorney for another is merely an incident in the progress of a cause, and no such order can be made by a court in which no cause is pending to which such order can relate. When the question as to the substitution of attorneys first arose and the reference here in question was ordered, it was doubtless supposed by all parties that it could be speedily terminated, and that, during the pendency of the proceeding for probate, the referee's report would be submitted to the Surrogate for his consideration and action. That expectation has not been realized. The moving party herein must there-

fore seek in some other tribunal the relief to which he may deem himself entitled.